RICE v. JACKSON.
DEPAUW v. SAME.

1. EVIDENCE—HEARSAY—CROSS-EXAMINATION.
The hearsay rule prohibits the use of a person's assertion, as
equivalent to testimony of the fact asserted, unless the asserter
is brought to testify in court on the witness stand, where he
may be probed and cross-examined as to the grounds of his
assertion and of his qualifications to make it.

2. SAME—HEARSAY.
Hearsay evidence is generally prohibited because credibility
depends not on the sworn and cross-examined witness, but on
the absent narrator who is neither sworn nor cross-examined.

3. SAME—HEARSAY—RES GESTAE—EXCITEMENT—REFLECTION.
*Res gestae* statements constitute an exception to the hearsay rule
prohibiting use of another person's assertion, where the state-
ments were uttered spontaneously under the stress of excitement
produced by a startling event and made before the declarant
has had time or opportunity to reflect, contrive, misrepresent,
or fabricate.

REFERENCES FOR POINTS IN HEADNOTES
[1]  20 Am Jur, Evidence §§ 451, 454.
[2]  20 Am Jur, Evidence § 452.
[3]  20 Am Jur, Evidence § 661 *et seq.*
[4-7, 9]  20 Am Jur, Evidence §§ 669, 670.
[8]  20 Am Jur, Evidence § 676.
[10]  20 Am Jur, Evidence § 1248 *et seq.*
  22 Am Jur, Fires § 86 *et seq.*

4. Same—Spontaneous Statements as to Cause of Fire—Res Gestae.

Testimony that defendant's employee, not present at the trial, made statements as to cause of fire within 20 to 25 minutes after start of a fire which destroyed building, occupied by defendant as a garage and by plaintiffs as a gasoline station, made after the utterer had apprised plaintiffs that the fire was already past control by hand fire extinguisher, after the employee and plaintiffs had feverishly attempted to salvage vehicles and equipment, and while the employee and plaintiffs were across the street watching the conflagration as it broke through the roof, demolishing the structure in 35 minutes, *held,* admissible as *res gestae,* the utterances being spontaneous and unreflecting before there had been time to contrive and misrepresent.

5. Same—Res Gestae—Fires—Statements as to Origin.

Declarations made during a fire, explaining the origin of it, are regarded as contemporaneous with the event even though the event may be of considerable duration, and are admissible as *res gestae* utterances if made by one engaged in trying to put the fire out or otherwise actively concerned with it, if the speaker appears to have had personal knowledge of the facts and has spoken under the influence of the present or apprehended disaster.

6. Same—Res Gestae.

A *res gestae* statement, to be admissible, must relate to the circumstances of the occurrence preceding it.

7. Same—Res Gestae—Proximity to Occurrence.

Statements by defendant's employee, engaged in use of acetylene torch on a truck in defendant's garage, that fire started there while he was using the torch, that sparks therefrom ignited some gasoline and oil on the floor and went through the gasoline line into the tanks of the truck on which he was working, made within 20 to 25 minutes after the fire had started, after the employee assisted plaintiffs in salvaging vehicles and equipment and while standing across street and watching the structure burn up *held,* sufficiently closely related to the circumstances of the occurrence preceding the statements to be admissible under *res gestae* exception to the hearsay rule, since they related to the fire and its cause.

8. Same—Res Gestae—Statements by Employee as Binding Employer.

Statements by defendant's employee, relating to fire which damaged plaintiff's adjoining premises, as to manner in which fire

started and made while fire was yet burning is binding on the employer because it is *res gestae*, not because he continued to work for defendant and had not been authorized to make the statements.

9. SAME—HEARSAY—RES GESTAE—BURDEN OF PROOF.
   The burden of bringing hearsay statements within the *res gestae* exception to the hearsay rule is met when they are shown to have been made spontaneously, under the stress of excitement produced by a startling event, and before the utterer has had time or opportunity to reflect, contrive, misrepresent, or fabricate.

10. NEGLIGENCE—FIRE—PREPONDERANCE OF EVIDENCE.
    Judgment of trial court for plaintiff in negligence action, brought by owners of adjoining premises for damages thereto *held*, not against the preponderance of the evidence, where *res gestae* statements of defendant's employee as to cause of fire at which he was present and in an event in which he had participated was opposed by persons who had no first-hand knowledge as to who started the fire.

Appeal from Allegan; Smith (Raymond L.), J. Submitted Division 3 February 2, 1965, at Grand Rapids. (Docket Nos. 253, 254.) Decided April 19, 1965. Rehearing denied June 20, 1965. Leave to appeal denied by Supreme Court August 17, 1965.

Case by John J. Rice and Ohio Casualty Insurance Company, subrogee of John J. Rice, against Homer H. Jackson, doing business as Jackson Trucking Company, for damages sustained in fire caused by defendant's employee. Similar action by Robert J. DePauw. Cases tried together. Judgments for plaintiffs. Defendant appeals. Affirmed.

*Rex W. Orton,* for plaintiffs.

*Elizabeth Ramsey,* for defendant.

FITZGERALD, J. A direct confrontation between statements bearing on the outcome of a case and rules of evidence which seek to exclude considera-

tion of such statements are the makings for a lively lawsuit. And no less lively is the appeal, for it creates a fabric which is capable of confounding both lawyer and layman, reaching back, as it does, into the dim beginnings of the rules of evidence governing what is "admissible" and what shall be considered "inadmissible."

To set the scene more fully, we must take note that the principal character in the events which comprise this appeal is one Leon Harter, who is not a party to the case and who, indeed, was not even present at the trial to testify. Yet it is Leon Harter's words which haunt the courtroom and it is Leon Harter whose lips defendant-appellant seeks to seal.

Leon Harter, our missing witness, was a truck driver-mechanic for the Jackson Trucking Company in Otsego, Michigan.

At about 11:30 on the morning of September 8, 1961, he was alone in the Jackson garage when a fire broke out in the building which also housed a gasoline station operated by plaintiffs Rice and DePauw. In 35 minutes, the structure was totally destroyed.

In a suit against Jackson Trucking Company, plaintiffs alleged that the fire was caused by the negligence of Leon Harter and brought suit against his employer, Homer Jackson, in the Allegan County circuit court. The judge, sitting without a jury on the two consolidated cases, awarded damages totaling $4,246.25 against Jackson for plaintiffs' lost tools, lost inventory and loss of income resulting from the fire.

Leon Harter was the only person who could have had actual knowledge of the fire's origin but he could not be reached with a subpoena and was not present to testify at the trial.

Plaintiff Rice testified, however, that Harter had rushed into his part of the building with the news that the building was on fire. Rice further testified that after some cars had been rescued from the burning premises by Harter, DePauw, and himself, Harter told him that the fire was started when sparks from his acetylene torch ignited some gasoline and oil on the floor and went through the gasoline line into the tanks of the truck on which he was working. Plaintiff DePauw testified to essentially the same statements by Harter.

Rice's employee, Gerald Sunnock, substantiated Rice's and DePauw's testimony in regard to the statements, stating Harter had told him approximately the same thing. The conversation occurred approximately 20 to 25 minutes after Harter ran to Rice with news of the fire, and while firemen were still attempting to deal with the blaze. Flames had just gone through the roof.

The primary issue on appeal is whether the statements of the absent Leon Harter as to the cause of the fire—clearly hearsay evidence—are nevertheless admissible as *res gestae* statements. The trial court ruled that they were so admissible and gave a judgment for plaintiffs. Defendant appealed this determination.

No rule of law has ever been developed but that attorneys and courts have seized upon ways to circumvent binding restrictions. No better candidate for exceptions has ever been found than the hearsay rule, strict adherence to which would exclude a large proportion of testimony. To be sure, in any law school study of evidence, more time is spent on exceptions to the hearsay rule than upon the rule itself. But exceptions to rules frequently become catchalls for anything which seeks to bend the hard and fast rule, to the point where they almost submerge the rule itself.

Perhaps the most apt description of the evidentiary swamp into which a pursuit of the *res gestae* can lead us is best enunciated by Morgan, A Suggested Classification of Utterances Admissible as *Res Gestae,* 31 Yale LJ 229 (1922) in which he states:

"The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as '*res gestae.*' It is probable that this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking."

Yet it is only exact analysis and precise thinking which will unravel the statements of Leon Harter and why they bear upon the case.

The hearsay rule "prohibits the use of a person's assertion, as equivalent to testimony of the fact asserted, unless the asserter is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and of his qualifications to make it" (5 Wigmore on Evidence [3d ed], § 1364, p 9). In application, if a witness in court testified to what another person out of court stated to him and the court or jury is asked to believe that the statement is true, this testimony would be hearsay and not admissible in evidence.

Hearsay is generally prohibited because credibility depends not on the sworn and cross-examined witness, but on the unsworn and un-cross-examined, absent narrator. (2 Jones on Evidence [5th ed], § 268, p 514.)

Under the general heading of *res gestae* there have emerged exceptions to the rule prohibiting

hearsay evidence for statements uttered under the stress of excitement produced by a startling event, and made before the declarant has had time or opportunity to reflect or contrive. Whether labeled "excited utterances," "spontaneous exclamations," or, more generally, "*res gestae* statements," they are admissible because special reliability is thought to be furnished by the excitement which suspends the powers of reflection and fabrication.

In Michigan, the law regarding *res gestae* is clear. From *Rogers* v. *Saginaw-Bay City R. Co.* (1915), 187 Mich 490, to *Holtz* v. *L. J. Beal & Son, Inc.* (1954), 339 Mich 235, the conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it.

The "startling occasion" called for under point (1) has been applied by the Michigan Supreme Court to explosions, collisions, accidental injuries, shootings, and a variety of occurrences. It has never ruled on a fire involving *res gestae* such as present here, an event that is by character a continuing one. Previous decisions have dealt with one-time, split-second "startling occasions." Defendant-appellant urges that the continuing character of a fire is such that the spontaneity of a statement can be lost while the fire transpires.

With this we cannot agree. A fire that completely destroys a large building housing two businesses, in which the roof collapses, and in which considerable property is lost, cannot be said not to be a "startling occasion" simply because it took 35 minutes for the destruction to be wrought. Leon Harter's admis-

sions were made at the time the fire broke through
the roof. That he was in a state of nervous excite-
ment is shown by the fact that when he initially noti-
fied plaintiff Rice of the fire it had gone beyond his
ability to control it and he stated it was too late
for a hand fire extinguisher to do any good. Harter,
Rice, and DePauw worked feverishly attempting
to salvage vehicles and equipment and were finally
forced to stand across the street and watch the con-
flagration. Twenty to 25 minutes of frantic activity
in saving materials from the building offered scant
time for the reflecting that point (1) warns against
or for the contriving or misrepresentation of point
(2).

Defendant-appellant urges that the Harter state-
ments were not spontaneous since they were in re-
sponse to questions asked of him:

Mr. Rice said:

"I asked him what he was doing."

Witness Sunnock said:

"I asked him how the fire had started."

And Leon Harter answered.

Here we pursue an evidentiary illusion: that Leon
Harter should not say these things; that if he did,
they are not admissible; that if admissible, they
mean nothing.

But the illusion is fragile and shatters easily:
Leon Harter did say these things; he said them at
a time when they were little subject to prevarica-
tion; they are the best, and indeed, the only eye-
witness evidence as to what happened inside the
garage.

It would appear that such questions, asked at the
height of a blaze, were not calculated as leading ques-
tions, but merely the first things that happen into

the mind of anyone who comes upon or is involved in a fire. The questions surely did not suggest the answer, and Leon Harter's answer was the same to both questions.

A case comparable to the instant one is *Stone* v. *Sinclair Refining Co.* (1923), 225 Mich 344 (cited with approval in *Rife* v. *Gafill Oil Company* [1926], 235 Mich 15) where the dying wife of the plaintiff was found after an explosion lying on the lawn, her children burned and the house burning. She was asked what was the matter and how it had happened and she replied (referring to a nearby grocer), "Pete gave me gasoline instead of kerosene." The court affirmed judgment for the plaintiff-husband by ruling that the statement was clearly admissible as part of the *res gestae.* In neither *Sinclair* nor the instant case did the questioner have any idea what the answer might be.

As in *Sinclair,* the events here were such as to produce nervous excitement, to render the utterance spontaneous and unreflecting and to elicit the statement before there had been time to contrive and misrepresent.

The weight of authority in fire cases is summed up in 163 ALR 15, 56, 57, where it is stated:

"In cases of damage by fire the pendency of the event is often of considerable duration. Declarations made during the fire explaining the origin of it, are regarded as contemporaneous with the event and as admissible if made by one engaged in trying to put it out or otherwise actively concerned with it, if the speaker appears to have had personal knowledge of the facts, and to have spoken under the influence of the present or apprehended disaster.

"Accordingly, where the plaintiff's property has been destroyed by fire alleged to have originated on the defendant's premises and spread from there

to the plaintiff's, declarations of the defendant's em-
ployees, made during the progress of the fire and
tending to show the place or manner of its origin or
the cause of its spreading, are admissible for the
plaintiff as part of the *res gestae*."

Point (3) that "the statement must relate to the
circumstances of the occurrence preceding it," is
urged by defendant-appellant as another bar to ad-
mission of Harter's statements as part of the *res
gestae*. Counsel makes the statement, "Standing
across the street 20 minutes later watching the fire
was no part of the act of using the acetylene torch."
This we cannot accept. The fire was a result of the
use of the acetylene torch and inextricably linked to
it. Counsel cites 31A CJS, Evidence, § 405: "The
*res gestae* statement must be related to the main
occurrence and not to some remote collateral event
which is not the subject of the litigation." To this
we can only say that reason leads us to the conclu-
sion that the *fire* and *its cause* is the main occurrence.
Stating that standing across the street watching the
final progress of the fire is a "remote collateral
event" is legal bootstrapping and cannot be accepted
in the light of human nature: there was nothing
left to do but stand across the street when the fire
had reached the inferno stage. To watch the flames
finish consuming their place of employment seems,
indeed, closely related to the subject of the litigation.

We feel that the three points so often reiterated
by the Supreme Court of this State have been ful-
filled by the instant case and that the trial judge
correctly ruled Leon Harter's statements admissible
as *res gestae* exceptions to the hearsay rule.

Once this decision is made, only three contentions
remain to be disposed of.

The question arises as to whether the admission
of the employee, Leon Harter, is binding upon his
employer and whether it can be said that the admis-

sion of the employee is the admission of the em-
ployer-defendant.

While this does not appear to have been a major
consideration in the hearing of the cause, the trial
court properly ruled that the Leon Harter state-
ments made during the course of the fire were ad-
missible as part of the *res gestae* and not because
Leon Harter was an employee of the defendant.

Defendant-appellant states that Harter was em-
ployed as a truck driver-mechanic. "He was not
employed to stand across the street watching fires,
nor was he employed to make statements concerning
his activities." Such a statement again thwarts ap-
plication of logic. Harter was still an employee of
Defendant Jackson and the collapse of the building
did not terminate such employment. The record
discloses that Leon Harter continued to work for
the defendant for "6 or 7 months after the fire."
Ruling that Harter's statements were *res gestae*
brings the case within the rule of *Gorman* v. *McCleaf*
(1963), 369 Mich 237, 241:

"A statement in the nature of an admission by an
employee is not admissible as to the employer so
as to bind the employer, *unless it is a part of the res
gestae* or unless authorized by the employer or made
within the scope of the employment." (Emphasis
supplied.)

Once Leon Harter's statements are admitted, the
contention that plaintiffs have failed to sustain the
burden of proof is met and negated. The burden
of bringing the Leon Harter statements within the
three-way test fell upon the plaintiff and that bur-
den was discharged.

A final issue involves whether the judgment of
the trial court is against the preponderance of evi-
dence. We do not find it was.

A few more facts are necessarily recited to determine why Leon Harter's statements, though made out of court, and though he was unavailable for cross-examination, still constitute the most reasonable and persuading evidence available.

The floor of the building had originally been of cement but through hard use, it had crumbled away, leaving a floor composed of a 35-year accumulation of oil and grease. The skylights were closed off in Jackson's section by a ceiling of highly inflammable paper that was a combination of asphalt, kraft and aluminum foil. The wiring was old and defective. Any of these was an effective ingredient for a fire.

Defendant-appellant's counsel, through an impressive range of witnesses, including a fire fighter of 18 years experience, an automobile spray painter, a fire engineer with 25 years experience with the State police and State fire marshal, offered testimony that the fire could have started almost anywhere but in the oil and grease on the floor of the building as Leon Harter's statement had indicated it had started.

Defendant-appellant urges that the fire started in the ceiling. Leon Harter said the fire started on the floor where he was cutting a radiator from a truck with an acetylene torch and that sparks went in some gasoline and oil on the floor and started it.

We cannot deny that Leon Harter's statements are the most convincing evidence of how the fire started, for he was on the scene. He stated that he started the fire.

None of the defendant's witnesses was present in the Jackson garage when the fire started. Two of defendant's expert witnesses were never present at the fire. The defendant was not present at the fire. Leon Harter was present at all times. He was a participant in the fire, related how he caused it, and

the testimony of persons who have no first-hand knowledge fades by comparison to the statements of the one who started the fire.

Whether the *res gestae* exception has perhaps not served its purpose since its first use in 1637, *Rex v. Hompdon, Ship Money Case,* 3 Howell's State Trials 988, will be for future courts to decide. The dividing line between *res gestae* and the whole field of spontaneous exclamations or excited utterances is a thin line.

*Res gestae* has served well to expand admissibility but its very nature—that of an exception to the law of evidence's most revered concept, the hearsay rule —has made it one of the truly shadowy areas of the law, applied indiscriminately to true admissions and less logically by some jurisdictions to declarations which are not hearsay at all. Applications of the term *res gestae* have been clear cut enough to stand alone under a well-defined principle of law, without being pursued like a phantom.

That *res gestae,* as terminology, may be on its way to the legal graveyard is demonstrated by the Model Code of Evidence (1942) as adopted and promulgated by the American Law Institute, the body of which never mentions the words *"res gestae."*

Judgment affirmed. Costs to appellees.

HOLBROOK, P. J., and J. H. GILLIS, J., concurred.