PEOPLE *v.* KELLEY

1. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION.

The *res gestae* exception to the hearsay evidence rule provides that a statement which would otherwise be hearsay, is admissible if (1) there was a startling occasion, startling enough to produce nervous excitement and render the statement spontaneous and unreflective (2) the statement was made before the declarant has had time to contrive or misrepresent and (3) the statement relates to the circumstances of the occurrence preceding it.

2. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION.

A statement of a declarant offered to prove the truth of the matter in the statement was admissible, even though the declarant did not testify, as a *res gestae* exception to the hearsay rule where (1) there had been a fire in a building, (2) the declarant had been burned in the fire and had made the statement within seconds after his escape from the building and (3) the statement concerned how the fire started.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 708.
[3, 4] 29 Am Jur 2d, Evidence § 638.
[5–9] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
[10] 5 Am Jur 2d, Arson § 15.
[11] 31 Am Jur 2d, Explosions and Explosives § 121 *et seq.*

3. CRIMINAL LAW—EVIDENCE—HEARSAY—ADOPTIVE ADMISSION.

> An accused's silence in the face of an accusation is deemed an admission where the silence occurs while the accused is not under arrest or in custody and as part of the *res gestae* of the crime, because a guiltless person would protest such an accusation.

4. CRIMINAL LAW—EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—ADOPTIVE ADMISSION.

> Extra-judicial assertion of a codefendant made to the defendant, charged with arson, after a building had been set on fire "You threw the match too quick," was admissible under the *res gestae* exception to the hearsay rule where the statement was made within seconds of the defendant's escape from the burning building and was admissible under the adoptive admission exception where the defendant, not being in custody, remained silent in the face of the accusation.

5. CRIMINAL LAW—RIGHT OF CONFRONTATION—EVIDENCE—ADMISSIBILITY—HEARSAY.

> The right to confront one's accusers does not automatically preclude the admission of hearsay testimony in criminal cases; the admissibility of a hearsay declaration depends upon the nature of the statement and the circumstances of its making.

6. CRIMINAL LAW—EVIDENCE—HEARSAY—ADMISSIBILITY—FOUNDATION—RIGHT OF CONFRONTATION—PROBABLE ACCURACY.

> The people before being allowed to admit a hearsay declaration in a criminal case must show that the circumstances of the making of the statement are such that the accuracy of the statement is highly probable.

7. CRIMINAL LAW—EVIDENCE—HEARSAY—ADMISSIBILITY—RIGHT OF CONFRONTATION.

> Whether a particular hearsay declaration may be admitted against a criminal defendant without infringing the defendant's right of confrontation depends on the nature of the declaration and the circumstances of its making; hearsay may be admitted where the circumstances of the statement's making create a substantial likelihood of an accurate report of the hearsay assertion and where there exists reasonable assurance that cross-examination would be unavailing.

8. CRIMINAL LAW—EVIDENCE—HEARSAY—ADMISSIBILITY—RIGHT OF CONFRONTATION—JUDICIAL DETERMINATION.

> The trial judge before allowing an extra-judicial statement into evidence must, outside the hearing of the jury make deter-

minations that the circumstances surrounding the making of the statement create a substantial likelihood of the accurate report of the statement and that there exists reasonable assurances that cross-examination would be unavailing.

9. Criminal Law—Right of Confrontation—Evidence—Hearsay —Admissibility.

Evidence, although admissible under a hearsay rule exception, may not necessarily be admissible as in a criminal trial, because the evidence might still violate the confrontation clause; no complete congruence exists between the hearsay exceptions and the confrontation clause.

10. Arson—Preparation to Burn.

The crime of burning real property is a separate and distinct crime from the crime of wilfully preparing to set a fire (MCLA §§ 750.73, 750.77).

11. Arson—Explosives—Gasoline.

Gasoline is an explosive substance within the meaning of the statute proscribing the placing of any explosive substance with the intent to destroy (MCLA § 750.207).

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 December 14, 1970, at Detroit. (Docket No. 9973.) Decided March 29, 1971.

Eugene Kelley was convicted of arson, preparation to burn, and the placing of explosives with injury resulting. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Thomas J. Olejnik,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and JEANNETTE,* JJ.

J. H. GILLIS, J. This case presents a nice question about the dimensions of the confrontation right in criminal cases. In one particular, we must decide whether there is any room for hearsay exceptions within the scope of the confrontation clause.

In the early morning hours of January 12, 1969, a second-floor dance hall known as the Soul Expression Bar in the City of Detroit was destroyed by fire. The fire was of criminal origin. Gasoline had been poured over the stairway leading to the dance floor. This gasoline was then ignited; fire resulted and several people were injured.

The defendant, Eugene Kelley, and another, Ronald Robinson, were tried separately under an information which charged them in two counts with different forms of arson. Count 1 charged that defendant Kelley wilfully and maliciously burned the above-mentioned building contrary to MCLA § 750.73 (Stat Ann 1962 Rev § 28.268). Count 2 of the information charged that Kelley arranged and placed an inflammable liquid, to-wit: gasoline, in and about the second-floor dance hall with the intent to burn the dance hall, contrary to MCLA § 750.77 (Stat Ann 1962 Rev § 28.272).

Count 3 of the information charged a violation of MCLA § 750.207 (Stat Ann 1962 Rev § 28.404), a section of the criminal code dealing with the unlawful use of explosives. It charged that Kelley placed an explosive substance, gasoline, in and upon the Soul Expression Bar with intent to destroy the bar, which substance upon explosion caused the destruction of the property and personal injury.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant Kelley was tried by a jury and convicted on all three counts. He was given the mandatory life imprisonment sentence, without parole, for conviction on Count 3. On the arson counts, Counts 1 and 2, Kelley was sentenced to serve from 2-1/2 to 10 years in prison. All three sentences were to run concurrently. Defendant's motion for new trial was denied by the trial court. From his convictions and the denial of his motion for new trial, defendant Kelley appeals.

For the people, the testimony at trial established the following view of what happened on the morning of January 12th. At about 1:30 a.m., Kelley, together with Ronald Robinson, Theodore Wallace, Ulysses Butts, and Donald Jones, drove to the Soul Expression dance hall and left Robinson there for about one-half hour. When Kelley and the others returned, Robinson informed them that there had been an argument over his entry to the hall and that he had been refused admission. The five men then drove to a nearby gas station where Ronald Robinson obtained a two-gallon can of gasoline. It was Theodore Wallace's testimony that, on returning to the car after purchasing the gas, Robinson said "he was going to burn it down if he couldn't get back in to get his money back".

The five men then returned to the Soul Expression dance hall. Ronald Robinson got out of the car with the can of gasoline. According to the testimony of both Ulysses Butts and Donald Jones, Robinson motioned to defendant Kelley and said, "Come on". Kelley left the car and followed "right behind" Robinson. Both men then entered the door leading immediately to the stairway of the dance hall. Moments later, the stairway was engulfed by flames. Robinson and Kelley were seen running together from the burning building. They jumped

into the car and, together with Wallace, Butts, and Jones, drove from the scene.

Just what part defendant Kelley played in the criminal episode—indeed, whether he played any role at all—was disputed at trial. Defendant Kelley took the stand and testified that his actions on the morning of the 12th were completely innocent. Kelley admitted following Robinson from the car. He admitted his presence on the stairway moments before the fire; however, according to Kelley's testimony, his purpose in following was only to retrieve his overcoat which Robinson had left at the dance hall earlier in the evening. Kelley testified that he climbed the stairway and obtained his coat. Then, as he was leaving, it was Kelley's testimony that:

"And on my way downstairs with the coat, Ronald Robinson asked me for a match. And I told him I didn't have a match. He says, 'one in your coat pocket'. And I didn't know it was a match in there because I don't smoke or anything, and I never carried any matches. So he snatched my coat in kind of a angry way and I was turned around walking out the door. And as I walked out the door, he come out and nearly knocked me down, and it was a fire behind him, and I am on my way to the car all the time. And in the confusion I didn't know what to do and I just ran on to the car, the both of us.

"*Q.* [*By Mr. Fury, defendant's counsel*]: All right. Did Robinson say anything to you when you were in the car?

"*A.* No, he didn't."

For the people, however, there was ample evidence, both circumstantial and direct, which, if believed, established defendant Kelley's participation in the arson. To borrow Learned Hand's characterization, there was sufficient evidence such

that the jury could find "not only that the witness's testimony is not true, but that the truth is the opposite of his story". *Dyer* v. *MacDougall* (CA 2, 1952), 201 F2d 265, 269. We begin with the testimony of Delbert McCoy.

McCoy, who at the time of the fire was on the stairway leading to the dance hall, testified that he observed two individuals at the foot of the stairway. Each of these individuals, according to McCoy, played a part in starting the fire. McCoy testified that "the first man spread out the gasoline". When asked what happened after the first man spread the gasoline, McCoy testified: "The other man threw the match on the way out".

In the fire that followed, McCoy was severely burned. His eyesight was impaired and, at the time of trial, he was unable to identify defendant Kelley as one of the men seen at the foot of the stairway. However, McCoy's testimony established a joint effort; it squarely conflicted with the defendant's protestation that Robinson alone was responsible. According to McCoy, there was no exchange of overcoats; rather, there was a joint effort.

McCoy's testimony establishing joint participation was corroborated by the testimony of Theodore Wallace, Ulysses Butts, and Donald Jones. This time, however, defendant Kelley was directly implicated; no inference was required to link Kelley to the criminal episode. All three men, Wallace, Butts, and Jones, testified that when Robinson and Kelley returned to the car, Robinson commented on Kelley's participation as follows (we quote the testimony of Ulysses Butts):

"*Q.* And after you saw the fire what did you see?
"*A.* Them jumping in the car.

"*Q.* When you say 'them jumping in the car,' who do you mean?

"*A.* Eugene and Ronnie.

"*Q.* Now did Ronald Robinson say anything to Eugene Kelley as he got into the car?

"*A.* After he got back in?

"*Q.* Yes?

"*A.* Yes.

"*Q.* What did he—what did Ronald Robinson say to Eugene Kelley as he got back in?

"*A. He said, 'You threw the match too quick.'*

"*Q.* Ronald Robinson said to Eugene Kelley, 'You threw the match too quick'?

"*A.* Yes.

"*Q.* Did Eugene Kelley reply at all?

"*A.* No." (Emphasis supplied.)

Thus the accusatory finger of a co-participant in crime pointed with explicit directness at Eugene Kelley. And, as will later appear, it is significant that Robinson's non-custodial accusation went unanswered.

The trouble with Butts' testimony, as well as that of Wallace and Jones, however, is that it is hearsay—hearsay pure and simple. Butts' testimony is only what someone else asserted, offered to prove the truth of the assertion.

"He [Robinson] said, 'You [Kelley] threw the match too quick.' "

And the extrajudicial declarant, Robinson, neither appeared at trial nor was he available for cross-examination. This, according to Professor Wigmore, is classic hearsay. See 5 Wigmore, Evidence (3d ed), § 1361, p 2.

At trial, defense counsel objected to the introduction of Robinson's extrajudicial assertion implicating defendant Kelley. Counsel's objection was twofold. First, admission of Robinson's unsworn

statement violated the hearsay rule. Counsel also argued that admission of Robinson's statement, absent his appearance and cross-examination, denied defendant Kelley the right of confrontation constitutionally guaranteed to criminal defendants. On this point, particular reliance was placed on *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476).

The trial court overruled defendant's objection and denied counsel's motion for a mistrial. Judge Schemanske was of the view that Robinson's statement, although hearsay, was admissible under the *res gestae* exception to the rule, made, as Judge Schemanske put it, "within seconds of escape from the burning building". The court also considered Kelley's silence in the face of Robinson's accusation to be Kelley's adoption of the statement as his own, and thus admissible under the rules of evidence. See 4 Wigmore, Evidence (3d ed), § 1071, p 70. Finally, Judge Schemanske ruled: "We are not dealing with the *Bruton* situation * * * but strictly with the well-grounded exception to the hearsay rule".

On appeal, the first question concerns alleged error in the admission against defendant Kelley of Robinson's inculpatory hearsay statement: "You threw the match too quick" . The admissibility question has, to counsel's credit, created quite a fire of appellate advocacy. The fire is one, however, which we shall—after the necessary excursus—quickly put out.

For reasons which follow, we hold that Judge Schemanske was right. He was right as an evidentiary matter in admitting Robinson's statement. Furthermore, Judge Schemanske was right as a matter of confrontation jurisprudence—a field recently enlarged by addition of the United States Supreme Court's plurality pronouncement in *Dutton*

v. *Evans* (1970), 400 US 74 (91 S Ct 210, 27 L Ed 2d 213).

## I

First, the record adequately supports Judge Schemanske's determination that Robinson's statement was admissible as within the *res gestae* exception to the hearsay rule.

In *Rice* v. *Jackson* (1965), 1 Mich App 105, 110, 111, the admissibility of *res gestae* statements was exhaustively reviewed by this Court. Under the standards of *Rice,* which have applicability in this criminal action, see *People* v. *Ivory Thomas* (1968), 14 Mich App 642, 646, such statements are admissible in evidence under the following conditions:

"Under the general heading of *res gestae* there have emerged exceptions to the rule prohibiting hearsay evidence for statements uttered under the stress of excitement produced by a startling event, and made before the declarant has had time or opportunity to reflect or contrive. Whether labeled 'excited utterances,' 'spontaneous exclamations,' or more generally, *'res gestae* statements,' *they are admissible because special reliability is thought to be furnished by the excitement which suspends the powers of reflection and fabrication.*

"In Michigan, the law regarding *res gestae* is clear. * * * [T]he conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it." (Emphasis supplied.)

Testing the facts of this case against these standards, we find (1) a startling occasion—specifically,

the fire that eventually destroyed the Soul Expression Bar. On this point, *Rice* v. *Jackson, supra,* p 111, forecloses any argument:

"A fire that completely destroys a large building housing two businesses, in which the roof collapses, and in which considerable property is lost, cannot be said not to be a 'startling occasion'."

Moreover, in this case there was testimony that the declarant Robinson had been burned as a result of the fire, a circumstance in all likelihood buttressing Robinson's nervous excitement—the very foundation of admissibility under the *res gestae* exception. The requirement (2) that the statement must have been made before there has been any time to contrive is satisfied here by Judge Schemanske's finding that it was made within seconds of escape from the burning building. This finding is amply supported in the record. Finally, (3) the statement related to the circumstances of the occurrence preceding it; it described just how the fire started.

Judge Schemanske was also on sound evidentiary ground when he viewed Kelley's silence in the face of Robinson's non-custodial accusation as defendant's admission by adoption of the incriminatory statement.

In *People* v. *Gisondi* (1967), 9 Mich App 289, 293, 294, this Court noted:

"Nevertheless, under long standing Michigan precedents, which antedate *Escobedo* and *Miranda,* the accused's silence in face of an accusation is not deemed an admission or confession in a criminal case (*People* v. *Bigge* [1939], 288 Mich 417), *except when such silence occurs on the part of a suspected participant in a crime as a part of the res gestae* (*People* v. *Todaro* [1931], 253 Mich 367)." (Emphasis supplied.)

Unfortunately for defendant Kelley, his silence was that of a suspected participant in a crime as part of the *res gestae*. The statement was made during the course of the criminal episode; it recounted a detail of the crime. Under these circumstances, Kelley's on-the-scene silence evidenced an adoption by him of Robinson's accusation. Accordingly, there was no error in the use of Robinson's statement. It constituted Kelley's adoptive admission. *People* v. *Todaro* (1931), 253 Mich 367; see also, 4 Wigmore, Evidence (3d ed), § 1071, p 70; Annotation, "Admissibility of Inculpatory Statements made in the Presence of Accused, and not Denied or Contradicted by Him," 80 ALR 1235, supplemented in 115 ALR 1510.

At trial, Judge Schemanske correctly noted the rationale for introduction of Robinson's statement as Kelley's adoptive admission:

"Certainly, a guiltless person would have protested such an accusation made in the presence of three other people."

Our research discloses that Judge Schemanske was in the company of quite eminent jurists. We quote Chief Justice Traynor, *People* v. *Osuna* (1969), 70 Cal 2d 759 (76 Cal Rptr 462, 465; 452 P2d 678, 681) (citations and footnotes omitted):

"One witness testified to one conversation and three witnesses testified to another in which defendants discussed the homicide. The conversations were with defendants' friends or confederates and took place on the day of the killing while defendants were still at large. Since each defendant implicated the other as well as himself, * * * each contends that the other's statements were inadmissible against him. There is no merit in this contention. During each conversation both defendants recounted various details of the crimes. *Had one disagreed*

*with what the other said, it is reasonable to assume that he would have said so.* Under these circumstances the statements of each were common admissions of both and therefore admissible against both." (Emphasis supplied.)

Accord, *United States* v. *Geaney* (CA 2, 1969), 417 F2d 1116, 1120, (per Friendly, J.); *State* v. *Saiz* (1968), 103 Ariz 567 (447 P2d 541); *State* v. *Thomas* (Mo, 1969), (440 SW2d 467); *State* v. *McClain* (1969), 254 La 56 (222 So 2d 855).

We emphasize that this is not a case of custodial silence, of silence after an arrest. At the time Robinson made the inculpatory statement, neither he nor Kelley were under arrest. For the reasons given in *People* v. *Gisondi, supra,* pp 293, 294, *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977), and *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974) are not in point.[1]

---

[1] The distinction emphasized here receives frequent mention in decisions dealing with silence in the face of accusatory remarks. See, *e.g.,* *People* v. *Osuna* (1969), 70 Cal 2d 759, note 1 at 765 (76 Cal Rptr 462, note 1 at 465; 452 P2d 678, note 1 at 681): "[T]hese conversations were initiated by defendants *when they were not in custody* * * * ." (Emphasis supplied.)

We recognize that *People* v. *Bigge* (1939), 288 Mich 417, contains broad language inconsistent with the view that pre-arrest, non-custodial silence in the face of incriminating statements may serve as an adoptive admission. This Court has not, however, so construed the *Bigge* rule. In *People* v. *Gisondi* (1967), 9 Mich App 289, 294, we discussed *Bigge* and stated:

"The reason for the *Bigge* rule is clear. Without it, the constitutional privilege against self-incrimination would be vitiated. The privilege gives a man *under arrest* the right, with impunity, to be silent in face of an accusation. While, under certain circumstances, the statements of a person *in custody* may be used in evidence against him, his silence may not.

* * *

"Without the *Bigge* rule, a man *under arrest* could be accused and forced to reply on the pain of silence being used as proof of guilt. If he replied to the accusation, his reply might also be used in evidence against him. This would make a mockery of the privilege against self-incrimination." (Footnotes omitted, emphasis supplied.)

Candor requires us to note, however, that confusion exists, even in our own Court, as to this point. See the application of the

To summarize on the evidentiary point: There was no error in the admission of Robinson's hearsay declaration. Robinson's statement was admissible as a spontaneous, excited utterance; it was also admissible by way of Kelley's adoption of the statement as his own when uttered at the scene of the crime.

We pass to a consideration of defendant's constitutional claim—specifically, the claim that defendant's right of confrontation was violated by introduction of Robinson's unsworn statement.

## II

We begin just as we did in a recent case considering an analogous claim, *People* v. *Gauthier* (1970), 28 Mich App 318, *leave to appeal denied* (1971), 384 Mich 812:

"This case requires an interpretation of the right of confrontation guaranteed to criminal defendants by [Const 1963, art 1, § 20],[2] as well as by virtue of the Sixth Amendment to the United States Constitution.[3] *At issue is the scope of the confrontation right in criminal cases when read in light of a recognized exception to the hearsay rule*—specifically, the business records hearsay exception." (Footnotes renumbered, emphasis supplied.)

In this case of Eugene Kelley, the constitutional issue is the same, *i.e.*, the scope of the confrontation right in criminal cases. However, the exception to

*Bigge* rule in *People* v. *Wardell* (1970), 26 Mich App 69. We think the time is ripe for a definitive pronouncement from the Michigan Supreme Court.

[2] "In every criminal prosecution, the accused shall have the right * * * to be confronted with the witnesses against him."

[3] "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

The confrontation guarantee of the Sixth Amendment was made applicable to the states in *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923).

the hearsay rule in the instant case is a different one. In the present case, we are required to consider the constitutionality of the introduction in criminal cases of unconfronted, unsworn *res gestae* testimony. Some of our pronouncements in *Gauthier,* where we considered the validity of using business record hearsay in criminal cases, are quite relevant in adjudicating defendant Kelley's constitutional objection to the admission in evidence of Robinson's *res gestae* statement.

In *People* v. *Gauthier, supra,* an incriminatory hearsay declaration of the deceased victim of the crime was introduced in evidence over defendant's objection that he had no opportunity to cross-examine the declarant. The people had offered the declaration as part of a business record, one prepared by the deceased desk clerk. Although the incriminatory statement was concededly hearsay, the testimony at trial adequately supported admission of the document under the business records exception to the hearsay rule. Reviewing the trial record in *Gauthier,* we were satisfied, as was the trial court, that the document was prepared under such circumstances as provided a substantial guarantee of trustworthiness.

Notwithstanding the admissibility of the hearsay declaration in *Gauthier* based upon a recognized exception to the hearsay rule, we considered the suggestion that the confrontation right in criminal cases necessarily mandates general exclusion of business record hearsay in such cases. Specifically, we considered the argument that merely because business record evidence is hearsay, its admission violates an accused's right of confrontation.

In the present case, defendant Kelley makes an analogous argument. We quote his brief:

"[I]t might be suggested that the statement of Robinson was properly admitted as a *res gestae* exception to the hearsay rule. But this argument proves too much. *It is not within the province of the Court to elevate a mere rule of evidence over established constitutional prerogatives.*

\* \* \*

"[Defendant's] submitted conclusion is that *regardless of the statement's evidential validity,* it must give way to the preservation of the higher right embodied in the Sixth Amendment." (Emphasis supplied.)

Defendant's argument is premised upon the notion that somehow the constitutional guarantee of confrontation precludes introduction of hearsay in criminal cases, regardless of the nature and circumstances under which the extrajudicial declaration was made. We rejected this premise in *Gauthier* as follows (28 Mich App at 333):

"It is a mistake to conclude that where hearsay evidence is admitted in a criminal case, confrontation rights of the accused necessarily have been violated. As recently stated by the United States Supreme Court:

" '[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.' *California* v. *Green* (1970), 399 US 149, 156 (90 S Ct 1930, 1934; 26 L Ed 2d 489, 495, 496)."

Since our decision in *Gauthier,* the recent plurality decision of the United States Supreme Court in *Dutton* v. *Evans, supra,* p 80, has only strengthened our view:

"*It is not argued, nor could it be, that the constitutional right to confrontation requires that no*

*hearsay evidence can ever be introduced.* In the *Pointer* [*Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923)] case itself, we referred to the decisions of this Court that have approved the admission of hearsay:

" 'This Court has recognized the admissibility against an accused of dying declarations, *Mattox* v. *United States* [1892], 146 US 140, 151, [13 S Ct 50, 36 L Ed 917], and of testimony of a deceased witness who has testified at a former trial, *Mattox* v. *United States* [1895], 156 US 237, 240–244 [15 S Ct 337, 39 L Ed 409]. See also *Dowdell* v. *United States* [1911], 221 US 325, 330 [31 S Ct 590, 55 L Ed 753]; *Kirby* v. *United States* [1899], 174 US 47, 61 [19 S Ct 574, 43 L Ed 890], * * * . There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses.' " (Footnote omitted, emphasis supplied.)

Contrary to defendant Kelley's position, quoted *supra,* it is clear that nothing in the confrontation clause automatically requires exclusion of all hearsay, *qua* hearsay. Like most other questions in the law, here too we cannot deal in absolutes. In each case, the question of the admissibility of a hearsay declaration in a criminal case depends upon the nature of the statement and the circumstances of its making. This much we made clear in *People* v. *Gauthier, supra,* p 337:

"The question of the admissibility of a business record in a criminal case should not be left to any general prohibition against such use. Rather, in our view, each case should be decided on its own facts. *In each case, the people should be obliged to convince the trial court, by way of a firm foundation of admissibility, that the circumstances of the making of the record are such that accuracy is highly probable. Where, however, as here, the trial*

*court is convinced of the trustworthiness of the particular record in question, it should be admitted in evidence."* (Emphasis supplied.)

These observations apply with equal force to the *res gestae* declaration at issue in the present case.

In Part I we held that Robinson's inculpatory statement was admissible in evidence as a spontaneous utterance on the theory that "special reliability is thought to be furnished by the excitement which suspends the powers of reflection and fabrication". *Rice* v. *Jackson, supra,* p 111. And this same special reliability that governs concerning admission of Robinson's statement as an evidentiary matter, also constitutes the rationale for admission as a constitutional matter. Again, *Gauthier* provides an example.

The reason why business record hearsay is generally held admissible in criminal cases without raising confrontation problems is that such hearsay is thought quite reliable. To this effect, we quoted Judge Augustus Hand [*United States* v. *Leathers* (CA 2, 1943), 135 F2d 507, 511] in our opinion in *Gauthier.* Furthermore, although we held that "in each case 'the test is one of reliability' ", *United States* v. *Hickey* (CA 7, 1966), 360 F2d 127, 143, *cert. den.* 385 US 928 (87 S Ct 284, 17 L Ed 2d 210), we noted that by the circumstances of its making, business record hearsay is generally regarded as providing a substantial guarantee of trustworthiness. See 5 Wigmore, Evidence (3d ed), § 1522, p 369. Similarly, other exceptions to the hearsay rule have been held not to violate the right of confrontation on the rationale of probable trustworthiness, *e.g., Mattox* v. *United States* (1892), 146 US 140 (13 S Ct 50, 36 L Ed 917) (admissibility against accused of dying declarations). See generally, Comment, "Preserving the Right to Confrontation—A New

Approach to Hearsay Evidence in Criminal Trials," 113 U Pa L Rev 741, 746 (1965).

With regard to the precise question before us, the constitutional validity of the introduction in evidence of *res gestae* utterances in criminal cases, several courts have expressly held that admission of *res gestae* hearsay does not violate an accused's confrontation right. *United States* v. *Chee* (CA 9, 1970), 422 F2d 52, is a leading case.

In *Chee,* the Ninth Circuit held that it was not error for an alleged rape victim to testify to the statement of one of the two accused, "We are going to rape you", which statement was used against the non-declarant defendant at trial. On appeal, defendant Chee argued that allowing use of the victim's hearsay testimony violated his right of confrontation because Roanhorse, the declarant, was not present at trial and, therefore, was not subject to cross-examination. The Ninth Circuit responded:

"This statement was made in Chee's presence and during the actual joint commission of the offense. It was properly admissible as part of the *res gestae.*" 422 F2d at 54.

The following cases are in accord: *Migliore* v. *United States* (CA 5, 1969), 409 F2d 786, *cert. den.* (1969), 396 US 975 (90 S Ct 449, 24 L Ed 2d 444); *McGregor* v. *United States* (CA 5, 1970), 422 F2d 925; see also *United States* v. *Zentgraf* (ND Cal, 1970), 310 F Supp 268, 271, for a summary of the law on this point.

Nor is *Bruton* v. *United States, supra,* made retroactive by *Roberts* v. *Russell* (1968), 392 US 293 (88 S Ct 1921, 20 L Ed 2d 1100), any aid to defendant Kelley's contention that introduction of Robinson's hearsay statement was constitutional error as to him. *Bruton* is expressly inapposite.

The *Bruton* principle is that admission in a joint trial of a co-defendant's confession implicating the defendant in the crime may be violative of the non-declarant's right of cross-examination secured by the Confrontation Clause, despite instructions to the jury that it should disregard the confession in determining the defendant's guilt or innocence. It was made explicit, however, that the co-defendant's extrajudicial statement incriminating defendant Bruton was inadmissible under traditional rules of evidence. The Supreme Court declined to rule or comment on the situation where the inculpatory hearsay statement might be accomodated by a recognized hearsay exception. In a footnote at 128 (88 S Ct at 1623, 20 L Ed 2d at 480, 481), the Court noted:

"We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence.  *  *  * There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause."

Case law postdating *Bruton* makes it clear, however, that there is indeed room enough for hearsay exceptions within the scope of the Confrontation Clause. See, *e.g., Reyes* v. *United States* (CA 9, 1969), 417 F2d 916, and *Kay* v. *United States* (CA 9, 1970), 421 F2d 1007, where the "concert of action" exception to the hearsay rule is sustained against constitutional challenge. In those which consider the *res gestae* exception, see *United States* v. *Chee, supra; Migliore* v. *United States, supra; McGregor* v. *United States, supra,* the *Bruton* decision is held inapplicable and the exception is upheld. Likewise, the constitutionality of the co-conspirator exception

to the hearsay rule has long been expressly or impliedly recognized. See *Delaney* v. *United States* (1924), 263 US 586 (44 S Ct 206, 68 L Ed 462); *Campbell* v. *United States* (CA 6, 1969), 415 F2d 356; *United States* v. *Littman* (CA 2, 1970), 421 F2d 981; *People* v. *Brawley* (1969), 1 Cal 3d 277 (82 Cal Rptr 161, 461 P2d 361).

We think in each case the question whether a particular hearsay declaration may be admitted against an accused without infringing the right of confrontation depends, as we have said, on the nature of the declaration and the circumstances of its making. Where such circumstances, however, create the substantial likelihood of an accurate report of the hearsay assertion and where there exists reasonable assurance that cross-examination would be unavailing, hearsay may be admitted without violating the confrontation right in criminal cases. In each case, the trial judge, outside the hearing of the jury, should first test the proffered declaration against these standards; if satisfied that the high standards of probable trustworthiness have been met, the court may then permit introduction of the hearsay statement without running afoul of the Confrontation Clause.

This is not to say that there is room enough for every hearsay exception, *qua* exception, within the Confrontation Clause. Academicians have pointed out that the traditional justifications for admission of certain types of hearsay as an evidentiary matter are wholly unrelated to the critical indicium of admissibility as a constitutional matter, *i.e.*, probable trustworthiness. See Comment, "Preserving the Right of Confrontation—A New Approach to Hearsay Evidence in Criminal Trials," 113 U Pa L Rev 741, 754–756; *People* v. *Brawley, supra,* at 289 (82 Cal Rptr at 167, 461 P2d at 367). Moreover,

the United States Supreme Court itself has noted that any suggestion of a complete congruence between the Confrontation Clause and hearsay exceptions is unwarranted:

"While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more nor less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." *California* v. *Green, supra,* at 155, 156 (90 S Ct at 1933, 1934; 26 L Ed 2d at 495).

We reiterate each case must turn on its own facts. And, in the circumstances of this case, we conclude there was no infringement of defendant Kelley's right of confrontation. In this regard, we make final reference to Mr. Justice Stewart's plurality opinion in *Dutton* v. *Evans, supra.*

In *Dutton,* the Supreme Court was required to consider the constitutionality of admission in evidence of a hearsay declaration which implicated defendant Evans in the crime. Declarant Williams neither testified at Evans' trial nor was he called as a witness. His incriminatory statement was related at Evans' trial by a witness named Shaw. This statement was admitted in evidence under a co-conspirator exception to the hearsay rule long established under Georgia statutory law.

Mr. Justice Stewart's opinion treats the question as one to be determined with reference to the particular circumstances of the case. His opinion in

no way suggests that the introduction of Williams' hearsay statement incriminating Evans is permissible solely on the basis of a recognized exception to the hearsay rule. Again, there is a refusal to wholly equate the Confrontation Clause and hearsay exceptions:

"The Georgia statute can obviously have many applications consistent with the Confrontation Clause, and we conclude that *its application in the circumstances of this case did not violate the Constitution.*" 400 US at 87, 88 (91 S Ct at 219; 27 L Ed 2d at 226). (Emphasis supplied.)

Justice Stewart then delineated the following circumstances which, for the plurality, undermined defendant Evans' contention that use of Williams' hearsay declaration violated his confrontation rights:

"The confrontation issue arises because the jury was being invited to infer that Williams had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament. But we conclude that there was no denial of the right to confrontation as to this question of identity. First, the statement contained no express assertion about past fact, and consequently it carried on its face a warning to the jury against giving the statement undue weight. Second, Williams' personal knowledge of the identity and role of the other participants in the triple murder is abundantly established by [an accomplice's] testimony and by Williams' prior conviction. *It is inconceivable that cross-examination could have shown that Williams was not in a position to know whether or not Evans was involved in the murder.* Third, the possibility that Williams' statement was founded on faulty recollection is remote in the extreme. Fourth, *the circumstances under which Williams made the statement were such as to give reason to suppose that*

*Williams did not misrepresent Evans' involvement in the crime.* These circumstances go beyond a showing that Williams had no apparent reason to lie to Shaw. *His statement was spontaneous, and it was against his penal interest to make it. These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant.*

"The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement'. *California* v. *Green,* 399 US at 161. Evans exercised, and exercised effectively, his right to confrontation on the factual question whether Shaw had actually heard Williams make the statement Shaw related. And *the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal.*" 400 US at 88, 89, (91 S Ct at 219, 220; 27 L Ed 2d at 227). (Emphasis supplied.)

These statements, particularly those underscored, apply equally in the circumstances of this case. Significantly, the test applied is that of reliability, of probable trustworthiness. Application of Mr. Justice Stewart's pronouncements leads us to our view that there was no violation of defendant Kelley's right of confrontation as to Robinson's hearsay declaration, "You threw the match too quick".

### III

Two issues remain. We treat them together in this final part.

We find without merit defendant's contention that his conviction on the two arson counts is void for multiplicity. Counts 1 and 2 of the information charged different statutory offenses. "The offenses under the various [arson and burning] statutes are separate and distinct    *    *    *    ." 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1006, pp 1394, 1395. A violation of MCLA § 750.77 (Stat Ann 1962 Rev § 28.272) requires elements not necessarily included in the conduct made criminal by MCLA § 750.73 (Stat Ann 1962 Rev § 28.268). Moreover, arguments similar to those raised by defendant on this point were considered and rejected in *People* v. *Rabin* (1947), 317 Mich 654, 661, 662.

Defendant's final contention is that his conviction on Count 3 cannot stand because the circumstances of this case do not disclose a violation of MCLA § 750.207 (Stat Ann 1962 Rev § 28.404), which provides:

"Any person who places in, upon, under, against or near to any building, car, vessel or structure, gunpowder *or any other explosive substance,* with intent to destroy, throw down, or injure the whole or any part thereof, which substance upon explosion shall cause injury to any person, shall be guilty of a felony, punishable by imprisonment in the state prison for life. Such convicted person shall not be eligible to parole." (Emphasis supplied.)

It is defendant's argument that gasoline is not an "explosive substance" within the meaning of the statutory provision. We disagree.

It is common knowledge that gasoline, as a physical substance, is capable of exploding; indeed, there was testimony of an explosion in this case—an explosion resulting from ignition of the gasoline soaked stairway at the Soul Expression Bar. Moreover, a careful reading of those sections of the

criminal code dealing with the unlawful use of explosives indicates that gasoline is likewise an "explosive substance" within the meaning of MCLA § 750.207 (Stat Ann 1962 Rev § 28.404). Where the legislature intended that gasoline be excluded from the legal definition it made such intention explicit. See MCLA § 750.200 (Stat Ann 1962 Rev § 28.397).

Defendant's conviction on all counts is affirmed. All concurred.