PEOPLE v CUNNINGHAM

Docket No. 56155. Submitted May 4, 1976 (Calendar No. 12).—Decided
     December 21, 1976.

     Norma J. Cunningham was convicted by a jury in Genesee
     Circuit Court, Anthony J. Mansour, J., of second-degree mur-
     der. The Court of Appeals, Fitzgerald, P. J., and McGregor and
     Targonski, JJ., affirmed (Docket No. 12372). Defendant admit-
     ted shooting and killing. her husband with a deer rifle in their
     home, but claims the rifle accidentally discharged when the
     decedent attempted to pull it away from her. Testimony by a
     police officer that the decedent had, earlier that day while the
     officer was visiting the defendant's home in response to a call
     from the defendant concerning a family argument with her
     husband, explained a pistol in his pocket by saying that he had
     taken it from the defendant, was admitted into evidence under
     the res gestae exception to the hearsay rule. Defendant ap-
     peals. *Held:*

          The conviction is affirmed by an equally divided court.

          The Chief Justice, joined by Justices Levin and Ryan, would
     reverse:

          1. In this case it is clear that the decedent's statement was
     admitted under the "excited utterance" exception to the hear-
     say rule. The use of the term "res gestae" in this context has
     properly been criticized, and a more accurate term would be an
     "excited utterance". The excited utterance exception is based
     upon the fact that such exclamations, by virtue of their origin,
     have peculiar trustworthiness. There must be a startling occa-
     sion, startling enough to produce nervous excitement, and
     render the utterance spontaneous and unreflecting; the state-
     ment must have been made before there has been time to
     contrive and misrepresent, and the statement must relate to
     the circumstances of the occurrence preceding it.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 902.
[2] 29 Am Jur 2d, Evidence §§ 708, 722, 731.`
[3, 5–7] 29 Am Jur 2d, Evidence §§ 708, 713, 727, 729.
     40 Am Jur 2d, Homicide § 331 *et seq.*
[4] 29 Am Jur 2d, Evidence §§ 493, 497.

2. In this case the decedent was attempting to explain to a police officer investigating a family fight why he had a pistol in his pocket. The statement was not spontaneous and unreflecting; it was made after there was time to contrive and misrepresent, and after time for consideration of self-interest. In fact the testimony was "double hearsay" because it consisted of the police officer testifying as to what the decedent told him concerning the defendant's threats.

3. The state has not demonstrated beyond a reasonable doubt that this inadmissible hearsay did not contribute to the conviction. The admission of the statement, with no opportunity in the presence of the jury to challenge the decedent who made it, denied the defendant a fair trial.

Justice Williams agreed that the contested statement was hearsay and inadmissible, but would affirm the conviction because its admission was harmless error. The hearsay statement was cumulative of other testimony.

Justice Coleman, joined by Justice Lindemer, would affirm. The trial judge who heard the testimony and observed the witnesses is in the superior position to find that the statements were "spontaneous and unreflecting", and the Supreme Court should not second-guess him by finding that the statement was made after there was time to contrive and misrepresent, and after time for consideration of self-interest. There was a circumstantial probability of trustworthiness sufficient to permit the jury to consider what weight it would assign the testimony, and the defendant was not denied a fair trial.

Justice Lindemer also agreed with Justice Williams that, if admission of the statement was error, it was harmless error.

DECISION OF THE COURT

1. HOMICIDE—APPEAL AND ERROR—EQUALLY DIVIDED COURT.

A decision of the Court of Appeals affirming a defendant's conviction of the second-degree murder of her husband is affirmed by an equally divided Court.

OPINION BY KAVANAGH, C. J.

LEVIN and RYAN, JJ.

2. CRIMINAL LAW—EVIDENCE—HEARSAY—EXCITED UTTERANCE.

*A statement is admissible into evidence under the excited utterance exception to the hearsay rule only where (1) there was a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) the statement was made before there has been time to*

contrive and misrepresent; and (3) the statement related to the circumstances of the occurrence preceding it.

3. Homicide—Evidence—Hearsay—Excited Utterance.

A statement made by a decedent shortly before he was killed to a police officer investigating a family fight to explain that he had a loaded pistol in his pocket because he had taken it from his wife when she threatened to shoot him was not admissible into evidence in a trial for murder as an excited utterance where the statement was not made immediately after a startling event to which it related, it was not spontaneous and unreflecting, and it was made after there was time to contrive and misrepresent, and after time for consideration of self-interest.

4. Criminal Law—Evidence—Hearsay—Presence of Party.

Hearsay is an extrajudicial statement which is offered to prove the truth of the thing said; the presence or absence at the time the statement is made of a party to the action does not affect the admissibility of the statement in evidence in the action.

5. Homicide—Evidence—Hearsay—Excited Utterance—Decedent's Statement.

Admission into evidence in a trial for murder of testimony about a statement made by the decedent which was offered to show that the defendant had threatened to shoot the decedent, her husband, to make it more believable that she murdered him, is reversible error where the state did not demonstrate beyond a reasonable doubt that the inadmissible hearsay concerning the decedent's statement did not contribute to the defendant's conviction; admission of the statement, with no opportunity in the presence of the jury for the defendant to challenge the person who made it, denied the defendant a fair trial.

Opinion Concurring in Part and Dissenting in Part

Williams, J.

See headnote 3.

6. Homicide—Evidence—Hearsay—Cumulative Testimony.

Admission in a trial for second-degree murder of hearsay testimony of a police officer concerning a statement made by a decedent shortly before he was killed to the effect that the defendant had threatened him during a family fight was not reversible error where the officer also testified that the defendant told him she might shoot the decedent; the hearsay testi-

*mony concerning the decedent's statement was cumulative, and the resulting error, if any, from its admission was harmless.*

OPINION BY COLEMAN, J.

LINDEMER, J.

7. HOMICIDE—EVIDENCE—HEARSAY—RES GESTAE.

*A statement made by a decedent shortly before he was killed to a police officer investigating a family fight to explain that he had a loaded pistol in his pocket because he had taken it from his wife when she threatened to shoot him was properly admitted into evidence in a trial for murder as part of the res gestae where the trial judge found that the statement was "spontaneous and unreflecting"; there was a circumstantial probability of trustworthiness sufficient to permit the jury to consider what weight it would assign the testimony.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Senior Assistant Prosecuting Attorney, for the people.

*Michael J. Smith* for defendant.

KAVANAGH, C. J. *(for reversal).* This is an appeal from affirmance of defendant's conviction of second-degree murder of her husband. MCLA 750.317; MSA 28.549. We reverse.

Defendant killed her husband with a rifle during a protracted family argument. Her defense was accidental shooting.

A police officer was permitted to testify that in response to a call from defendant he went to the defendant's residence on January 22, 1971 where he found the defendant and her husband in the midst of a "family fight". The decedent husband had explained a pistol protruding from his pocket as one he had taken from the defendant because she had threatened to shoot him.

The officer left, with the pistol, shortly after 3 p.m. At approximately 4 p.m. the same day, in

response to another call by defendant, police returned and discovered Mr. Cunningham's body lying in the doorway. Defendant was charged with murder.

At trial, the officer testified that during his 3 p.m. visit to defendant's home the decedent

"stated then that he had taken the gun from her [defendant] because she had threatened to shoot him with it".

Defense counsel made a belated objection to this testimony which was overruled. At the conclusion of the first day of trial, defense counsel moved to strike the testimony as inadmissible hearsay, and moved for a mistrial, stating "we can't cross-examine the decedent on this. There's no way we can have any attack whether this is—was a lie or not, and yet it's obviously extremely crucial to the decision of the jury in this case."

The motions were denied. The court found the statement to be "clearly hearsay, but * * * the res gestae exception to the hearsay rule may apply. * * * [T]here was an occasion which was startling enough to exert excitement and to render the statements by the deceased spontaneous and unreflecting. It was made before there was time to contrive or misrepresent."

The Court of Appeals agreed, finding that: "A review of the sequence of events leading to the fatal shooting convinces us that there was a circumstantial probability that the statement was trustworthy and admissible as part of the *res gestae*".

We are convinced that this conclusion is unwarranted and stems from a confusion of closely related concepts.

The use of the term "res gestae" in this context has properly been criticized. See, *e.g., People v Randall,* 42 Mich App 187; 201 NW2d 292 (1972); *People v Jones,* 38 Mich App 512, 515–516; 196 NW2d 817, 818–819 (1972). We agree with the observation of Justice LEVIN in *People v Ivory Thomas,* 14 Mich App 642, 654–655; 165 NW2d 879 (1968) (concurring):

"A more neutral, and for that reason more accurate, rubric than either *'res gestae'* or 'spontaneous exclamation' is the one adopted by Professor McCormick—'excited utterance.' McCormick on Evidence, § 272, p 578. Since courts generally hold admissible under this exception the statements of an excited person * * * this definitional refinement is a welcome advance toward clarity."

In this case, it is clear that the decedent's statement was admitted under the "excited utterance" exception.

The standards for admissibility of such statements were stated in *Rogers v Saginaw B C R Co,* 187 Mich 490, 493–494; 153 NW 784 (1915):

"The exception is based upon the fact that such exclamations, by virtue of their origin, have peculiar trustworthiness. It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it."

See also, *People v Ivory Thomas, supra;* FRE 803(2).

The rationale for this exception is stated by Dean McCormick to be "the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication". McCormick on Evidence (2d ed), p 704.

Wigmore states: "Since this utterance is made * * * during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance is taken as particularly trustworthy * * * ". 6 Wigmore on Evidence (Chadbourn rev), § 1747, p 195.

As Justice Levin recognized in *People v Ivory Thomas, supra:*

"Freed of the difficulty that can be caused by use of the terms *'res gestae'* and 'spontaneous,' this exception, the 'excited utterance' exception, stands clear as the simple principle which Wigmore originally enunciated, *i.e.,* when a person participates in a startling or shocking experience, the emotional excitement generated in him may render him unable or unlikely to fabricate concerning his experience. Like so much else which seeks to explain human conduct, this cannot be stated as a certainty, but it can create a circumstantial probability of trustworthiness." 14 Mich App at 655; 165 NW2d 879 (1968). (Levin, J., concurring.)

In this case decedent was attempting to explain to a police officer investigating a family fight why he had a loaded gun in his pocket. When measured against the criteria for admissibility as an excited utterance, and against the rationale for that hearsay exception, it is apparent that decedent's statement was not admissible. It was not made immediately after a startling event to which it related. It was not "spontaneous and unreflecting". It was made after there was time to contrive and misrep-

resent, and after time for consideration of self-interest.

"Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion." McCormick, *supra,* p 706. See also, *People v Ivory Thomas, supra* (Levin, J., concurring); *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366 (1965).

This statement was made at a time and in such circumstances that it was not admissible as an excited utterance. The prosecution also argues that because the challenged statement of the decedent "was made not only in appellant's presence, but also as part of a conversation and debate in which she herself took quite an active role, such statement was not hearsay evidence as to her". We explicitly reject that argument.

Hearsay is an extrajudicial statement which is offered to prove the truth of the thing said. *People v Hallaway,* 389 Mich 265, 275; 205 NW2d 451 (1973).

"One widely held myth about the hearsay rule is that an out-of-court statement is not hearsay if it was made in the presence of a party and hearsay if not made in his presence." Robinson, *Civil and Criminal Evidence,* 20 Wayne L Rev, 391, 398 (1974).

Judge Danhof pertinently recognized in *People v Sixty-Eighth District Judge,* 44 Mich App 553, 554, fn 1; 205 NW2d 608 (1973),

"the widespread and unfortunate misconception that the distinguishing factor of hearsay is the presence or

absence of a party to the action at the time the statement is made. McCormick calls this idea a bit of courthouse folklore. McCormick, Evidence (2d ed), § 246, p 586. Perhaps stronger language is in order."

The testimony in question was clearly hearsay. In fact, it was "double hearsay", consisting of the police officer testifying as to what the decedent told him concerning defendant's threats.

Finally, the prosecutor argues that even if the statement was improperly admitted, any resulting error was harmless because defendant herself told the officer that she "might load this gun and shoot [the decedent]". Thus, the testimony of the officer concerning decedent's statement was merely cumulative or corroborative on the issue of defendant's intent.

We disagree.

The statement was offered to show that defendant had threatened to shoot her husband, and thereby make it more believable that she murdered him.

The state has not demonstrated beyond a reasonable doubt that this inadmissible hearsay testimony concerning decedent's statement did not contribute to defendant's conviction. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v Liggett,* 378 Mich 706, 717; 148 NW2d 784 (1967). The admission of this statement, with no opportunity in the presence of the jury for the defendant to challenge the person who made it, denied defendant a fair trial.

The conviction is reversed. The cause is remanded for further proceedings.

Levin and Ryan, JJ., concurred with Kavanagh, C. J.

WILLIAMS, J. *(concurring in part; dissenting in part) (for affirmance).* I concur with the Chief Justice's conclusion that the contested statement in this case was hearsay and therefore inadmissible.

However, I dissent with respect to the order in this case. I agree with the prosecutor that even if the contested statement was improperly admitted, the resulting error was harmless. As the record indicates, the police officer testified at trial that defendant herself told him she "might load this gun and shoot [the decedent]". In light of his testimony, I believe the hearsay testimony of the officer concerning decedent's statement was cumulative. I would, therefore, affirm the conviction.

COLEMAN, J. *(dissenting) (for affirmance).* Defendant is appealing her conviction for the murder of her husband. The Chief Justice has written to reverse because the court admitted a statement made by the husband in the presence of a police officer during a heated argument with defendant about one hour before the husband was killed. Our colleague's opinion finds that this denied defendant a fair trial. We cannot agree. We would affirm.

On the date of the incident at about 3 p.m., two police officers were called to defendant's residence and found a family fight in progress. One officer gave this testimony:

"Well we arrived, we walked in the door. I observed the butt of a gun sticking out of the right rear pocket of Mr. Cunningham's pants. Approximately the same time Mrs. Cunningham made the statement to the fact that he had a gun. I took him out on the front porch, took the gun away from him out there, and came back into the house where the gun was unloaded.

"He stated then that he had taken the gun from her because she had threatened to shoot him with it. Then

he went on to state that he had had a check and while he was sleeping she had taken the check from his pocket and gone out and cashed it.

"In turn, she stated that he had threatened to shoot her and that he had taken a shot at her a few months prior to this. And they continued to argue back and forth and finally he agreed to leave the house.

"At this time the gun was—had been laid down. I'm not sure if it was on the table—

"*Q.* Could you speak up, please?

"*A.* I laid the gun down and she picked it up. And I told her that we'd have to take the gun with us, due to the fact that they were both quite upset. And she said no, that 'I just might load this gun and shoot this'—did you want the exact words?

"*Q.* Yes, would you state exactly as you remember it.

"*A.* She said, 'I might load this gun, just—I just might load this gun and shoot this motherfucker.'

"We told her no, that she was going to have to give the gun to us and explained that we were not going to keep the gun, but that she could come down and pick the gun up at a later time at the Identification Bureau a couple days from then when they had cooled down.

"She said no, that she wouldn't give it to us. She then sat back in a chair and put the gun behind her back. My partner took her by the left arm and I held onto her right wrist and took the gun away from her. She become upset and began to holler at us because we had come into her home and taken the gun away from her."

About one hour later, the police were called to the house and found Mr. Cunningham lying dead in the doorway. He had been shot with a rifle. Defendant admitted shooting him. She claimed that it was an accident that occurred during an argument when Mr. Cunningham grabbed a rifle she was holding.

The jury was properly instructed on defendant's theory of accident. They found her guilty of second-degree murder. The Court of Appeals affirmed.

When the officer's testimony was given during trial, defendant's attorney did not raise an objection until the direct examination was over. He then said:

"If it please the court, there is one matter, although I didn't object to the recounting of the conversation between Mr. and Mrs. Cunningham, I would—I think it has some relevance, but I would request the court to instruct the jury to limit the conversation to any statement he made as to showing the state of mind of the parties at that time. I think other—as to anything else would be hearsay to my client.

"I'm talking about the statements allegedly made by him reported by the officer on direct examination."

The court denied this motion.

At the close of the day's proceedings, counsel moved to strike the testimony and asked for a mistrial. The court denied the motion believing *"there was an occasion which was startling enough to exert excitement and to render the statements by the deceased spontaneous and unreflecting. It was made before there was time to contrive or misrepresent.* And it was made relative to circumstances which are in issue in this case."

In his opinion, the Chief Justice makes a different analysis. He believes that the statement "was made after there was time to contrive and misrepresent, and after time for consideration of self interest".

Thus, we have the trial judge who heard the testimony and observed the witnesses and felt the statements were "spontaneous and unreflecting". The Chief Justice finds the same statements to be otherwise. We believe the trial judge is in the superior position to make such a judgment. We would not second guess his call.

The Court of Appeals found no abuse of discretion in admitting the testimony. Its "review of the sequence of events leading to the fatal shooting convinces us that there was a circumstantial probability that the statement was trustworthy and admissible as part of the *res gestae*". We agree there was a "circumstantial probability of trustworthiness" here sufficient to permit the jury to consider what weight it would assign the testimony. Compare *People v Ernest Edwards,* 396 Mich 551; 242 NW2d 739 (1976).

The conviction should be affirmed.

LINDEMER, J., concurred with COLEMAN, J.

LINDEMER, J. Additionally, I agree with Justice WILLIAMS that, if the admission of the statement was error, it was harmless.

FITZGERALD, J., took no part in the decision of this case.