PEOPLE v PETRELLA

Docket No. 55742. Submitted December 8, 1982, at Lansing.—Decided
April 18, 1983.

Jerry Petrella was convicted of breaking and entering with intent
to commit criminal sexual conduct and first-degree criminal
sexual conduct following a jury trial in Ingham Circuit Court,
Jack W. Warren, J. Defendant appeals. *Held:*

1. The admission of the testimony of a police officer relative
to matters contained in police reports is not violative of the
rule that police reports may not be admitted into evidence in
the absence of the notes used to prepare the report where, as
here, the officer testified from memory and there was no
attempt to admit the report itself into evidence. The absence of
the notes used to prepare the report did not violate the defen-
dant's due process rights since there was no request for the
notes prior to their destruction, the police officer testified from

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5] 29 Am Jur 2d, Evidence §§ 472, 477, 839, 867.
  Admissibility in state court proceedings of police reports as business
  records. 77 ALR3d 115.
[2-4, 5] 21A Am Jur 2d, Criminal Law § 830.
[4, 5] 5 Am Jur 2d, Appeal and Error § 798.
[6, 7] 21A Am Jur 2d, Criminal Law § 798.
[6, 7, 9] 29 Am Jur 2d, Evidence § 371.2.
  Denial of accused's request for initial contact with attorney—cases
  involving offenses other than drunk driving. 18 ALR4th 743.
[8] 4 Am Jur 2d, Appeal and Error § 404.
  5 Am Jur 2d, Appeal and Error § 603.
[10] 5 Am Jur 2d, Appeal and Error § 896.
[11] 29 Am Jur 2d, Evidence § 709.
[12] 29 Am Jur 2d, Evidence § 719.
[13] 5 Am Jur 2d, Appeal and Error § 800.
  29 Am Jur 2d, Evidence § 256.
[14] 5 Am Jur 2d, Appeal and Error § 873.
  73 Am Jur 2d, Statutes § 346.
[15, 16] 65 Am Jur 2d, Rape § 2 *et seq.*
[16] 13 Am Jur 2d, Burglary §§ 8, 10.
  21 Am Jur 2d, Criminal Law §§ 277, 279.
[17] 81 Am Jur 2d, Witnesses §§ 4, 563.

memory and not from the report prepared from the notes, the testimony of the officer was used merely for impeachment, the testimony was cumulative, and there was no showing that the destruction of the notes was done in bad faith or with the intent to deprive the defendant of evidence.

2. The trial court did not err in refusing to suppress the identification testimony of the victim. The identification procedure which took place shortly after the crime did not require the presence of counsel. The preliminary examination confrontation was not unduly suggestive and, in any event, took place after the victim had already identified the defendant. Further, the victim testified that she knew the defendant and had plenty of time to observe the defendant during the crime itself.

3. The record fails to establish that there was prosecutorial misconduct which resulted in prejudice to the defendant.

4. While the testimony of the witness concerning the statement made by the victim identifying the defendant as her assailant was not admissible under the spontaneous utterance exception to the hearsay rule since the record fails to establish that the victim's statement was made while still under the excitement of the event and before she had time to contrive or misrepresent, the admission of that hearsay testimony was harmless error since the victim had already identified the defendant.

5. The use of the term "mental anguish" in the criminal sexual conduct statute does not render the provisions defining first-degree criminal sexual conduct unconstitutionally vague. The term "mental anguish" as used in the statute involves more mental distress than normally attends the victim of a sexual assault. To establish "mental anguish" such as will elevate a sexual assault to first-degree criminal sexual conduct requires proof that the victim suffered psychological effects which lasted inordinately long.

6. Since the aggravating factor which elevated the sexual assault to first-degree criminal sexual conduct was mental anguish rather than a sexual assault committed during the commission of another felony, conviction for both breaking and entering with intent to commit criminal sexual conduct and first-degree criminal sexual conduct was not barred by the prohibition against double jeopardy.

7. The trial court properly admitted into evidence the testimony of a prosecution's rebuttal witness since the testimony of that witness was used to impeach the credibility of an alibi witness rather than rebut the alibi defense. Rebuttal testimony used to impeach the credibility of an alibi witness may be

admitted at trial even in the absence of the filing of the statutory notice required for admission of testimony to rebut an alibi defense.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — POLICE REPORTS — POLICE OFFICER'S NOTES.

The evidentiary rule that fragmentary notes of the police must accompany a report prepared from those notes if the report is to be admitted into evidence does not prohibit the admission of testimony by the person who prepared the notes and report relative to matters which were the subject of the notes and report where the notes are unavailable but the witness testifies from memory and it is the testimony not the report that is admitted into evidence.

2. CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — DUE PROCESS.

The determination of whether a criminal defendant's due process rights have been violated by the suppression of evidence by the prosecution involves a three-stage inquiry: (1) whether the suppression was deliberate; (2) whether the evidence was requested by the defendant; and (3) whether hindsight discloses that the defense could have put the evidence to a not insignificant use.

3. CRIMINAL LAW — EVIDENCE — POLICE OFFICER'S NOTES.

A police officer's notes taken during the interrogation of the accused are material evidence within the meaning of the test of whether there has been prosecutorial suppression of evidence favorable to the accused.

4. CRIMINAL LAW — EVIDENCE — DESTRUCTION OF EVIDENCE — POLICE OFFICER'S NOTES.

Destruction by the police of a police officer's notes from which a police report was made, when done in bad faith or with the intent to deprive the defendant of evidence, mandates reversal of a defendant's conviction; however, the destruction of such notes when done as a part of departmental policy and not in bad faith or with the intent to deprive the defendant of evidence does not necessarily require reversal.

5. CRIMINAL LAW — EVIDENCE — DESTRUCTION OF EVIDENCE — POLICE OFFICER'S NOTES.

Reversal of a conviction is not mandated by reason of the destruction of a police officer's notes which were used to prepare the police report where there was no request for the notes prior to

destruction, the police officer testified from memory without the aid of the report prepared from the notes, the testimony of the officer relative to the subject matter contained in the notes and the report was used only for impeachment, the substance of the officer's impeachment testimony was cumulative, and the evidence against the defendant was strong.

6. CRIMINAL LAW — EYEWITNESS IDENTIFICATION — RIGHT TO COUN-
SEL.

A person suspected of a crime is generally entitled to counsel during identification procedures; however, a prompt on-the-scene identification may be held without counsel being present under appropriate circumstances.

7. CRIMINAL LAW — EYEWITNESS IDENTIFICATION — RIGHT TO COUN-
SEL.

Having a victim of a crime point out to the police her assailant is not the type of identification procedure requiring the presence of counsel where the victim already knew her assailant and had already indicated to the police who had assailed her.

8. APPEAL — RECORD ON APPEAL — TRANSCRIPTS.

The failure to provide the Court of Appeals with a transcript of a hearing acts as a waiver of any issue which is based upon events which transpired at that hearing.

9. CRIMINAL LAW — EVIDENCE — SUPRESSION OF EVIDENCE — EYEWIT-
NESS IDENTIFICATION.

Suppression of an in-court identification on the basis of an unnecessarily suggestive identification at the preliminary examination is not mandated where the victim making the identification had already made an identification before the preliminary examination, the time between the crime and the preliminary examination was only about a month, and the victim indicated that the defendant had been clearly observed for a period of time during the crime itself.

10. CRIMINAL LAW — TRIAL — PROSECUTORIAL MISCONDUCT — AP-
PEAL.

Reversal on the basis of prosecutorial misconduct is mandated only where there is a showing of prevalent misconduct by the prosecution and that such misconduct is crucial to the outcome of the case because the defendant's case was prejudiced by the misconduct.

11. CRIMINAL LAW — EVIDENCE — HEARSAY — EXCITED UTTERANCE.

A statement is admissible into evidence under the excited utter-

ance exception to the hearsay rule only where (1) there was a startling occasion, (2) the statement was made before there has been time to contrive and misrepresent, and (3) the statement related to the circumstances of the occurrence preceding it (MRE 803[2]).

12. CRIMINAL LAW — EVIDENCE — HEARSAY — EXCITED UTTERANCE — SPONTANEITY.

A statement by a victim of a rape made at least 40 minutes after a criminal act and after the victim had composed herself enough to make a phone call is not a spontaneous statement such as will come within the excited utterance exception to the hearsay rule.

13. CRIMINAL LAW — EVIDENCE — HEARSAY.

Admission of evidence of a statement made to a witness by the victim of a crime relative to the identity of the assailant is harmless error where the victim has already testified and identified the defendant as the assailant, since the evidence, even if hearsay, is merely cumulative evidence.

14. CRIMINAL LAW — STATUTES — CRIMINAL SEXUAL CONDUCT — VAGUENESS — JUDICIAL CONSTRUCTION.

A criminal statute is impermissibly vague if it does not provide fair notice of the conduct proscribed, confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or if its coverage is overbroad and impinges on First Amendment freedoms; however, even where the statute may be susceptible to impermissible interpretations, reversal of a conviction is not required where the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness and where the defendant's conduct falls within that proscribed by the statute as properly construed.

15. CONSTITUTIONAL LAW — VAGUENESS — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — MENTAL ANGUISH.

The first-degree criminal sexual conduct statute is not unconstitutionally vague by reason of the use of "mental anguish" as an element of the crime, since the phrase "mental anguish" as used in the statute involves the concept of the victim suffering significantly more mental distress than the average victim; that level of distress can be shown by evidence that the victim's distress caused psychological effects which lasted for an inordinately long period of time after the criminal act (MCL 750.520[a][f], 750.520[b][1][f]; MSA 28.788[1][f], 28.788[2][1][f]).

16. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — FIRST-DEGREE CRIM-
INAL SEXUAL CONDUCT — BREAKING AND ENTERING.

Convictions for both first-degree criminal sexual conduct and
breaking and entering with intent to commit criminal sexual
conduct do not violate the prohibition against double jeopardy
where the aggravating factor raising the criminal sexual con-
duct to first-degree criminal sexual conduct is other than that
the criminal sexual conduct was committed during the commis-
sion of the felony of breaking and entering, since, under such
circumstances, the breaking and entering is not an underlying
felony of the first-degree criminal sexual conduct conviction
and the crime of breaking and entering with intent to commit
first-degree criminal sexual conduct is completed once the
breaking and entering of the building with the necessary intent
is completed, the commission of any subsequent criminal acts
within the building not being necessary to support the breaking
and entering conviction (MCL 750.110, 750.520[b][1][f]; MSA
28.305, 28.788[2][1][f]).

17. WITNESSES — IMPEACHMENT — REBUTTAL WITNESSES.

Testimony by a prosectuion witness which is used to impeach the
credibility of an alibi witness and not to rebut the defendant's
alibi defense may be admitted during trial, and the defendant
is not entitled to notice of such witness (MCL 768.20, 768.21;
MSA 28.1043, 28.1044).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Peter D. Houk,* Prose-
cuting Attorney, *Janis L. Blough,* Chief Appellate
Attorney, and *Charles R. Toy,* Assistant Prosecut-
ing Attorney, for plaintiff.

*Lick, Emery and DeVine* (by *Lawrence J.
Emery),* for defendant.

Before: BRONSON, P.J., and T. M. BURNS and
ALLEN, JJ.

T. M. BURNS, J. On October 3, 1980, defendant
was convicted by a jury of breaking and entering
with intent to commit criminal sexual conduct,
MCL 750.110; MSA 28.305, and first-degree crimi-

nal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), and was subsequently sentenced to concurrent terms of from 7-1/2 to 15 years and 10 to 20 years imprisonment. He appeals as of right.

The question of when defendant cut his hair and shaved was one of the major factual issues. The complainant testified that defendant had long hair and a mustache during the rape, but was clean shaven with short hair when she identified him a few hours later. Defendant testified that his wife had cut his hair on March 5, 1977—four days before the crime. His wife testified that she did it the day before the crime. On the other hand, three other witnesses testified that they saw defendant very early on March 9, 1977, with long hair and a mustache.

During cross-examination, defendant specifically denied telling a police officer that he had his hair cut and mustache shaved the day of the crime. The police officer later testified in rebuttal that he had in fact told her that. Although she saved the written report of this interview, she destroyed her preparatory notes. Defendant now argues that her testimony violates the rule of *People v Rosborough,* 387 Mich 183, 194-195; 195 NW2d 255 (1972):

"We conclude that if the reports of the officers prepared at the end of a day's work are to be allowed in evidence, they must be accompanied by the fragmentary notes from which each report was prepared. Only in this fashion will it be possible for counsel for a defendant to proceed with a meaningful cross-examination of the officer."

However, the police report in the present case was not admitted as evidence. *Rosborough* applies only where the report itself is admitted into evidence as a past recollection recorded. This distinc-

tion was brought out in *People v Matuja,* 77 Mich App 291, 294; 258 NW2d 79 (1977):

"When, as here, a witness testifies from memory, with his recollection having been stirred by a writing, his testimony is what he relates, not the writing."

Defendant's next argument, however, is more serious. He claims that destroying the notes violates his right to due process. Where evidence has been suppressed, we look to see: (1) whether the suppression was deliberate; (2) whether the evidence was requested; and (3) whether "hindsight discloses * * * that [the] defense could have put the evidence to not insignificant use". *People v Dorsey,* 45 Mich App 230, 235; 206 NW2d 459 (1973), *lv den* 389 Mich 793 (1973).

The prosecutor, relying on *People v Gibson,* 115 Mich App 622, 629; 321 NW2d 749 (1982), *lv den* 414 Mich 889 (1982), argues that defendant has not shown that these destroyed notes would have been favorable. However, since they were destroyed soon after they were made and were never shown to defendant, we fail to see how defendant could have shown this.

These original notes of defendant's statement were material evidence. *People v Wallace,* 102 Mich App 386; 301 NW2d 540 (1980). The prosecution and the police have the duty to retain such notes: "We cannot stress too strongly the importance of retention by the police of their original notes and records * * *". *People v Poe,* 388 Mich 611, 620; 202 NW2d 320 (1972).

If the police destroyed the notes in bad faith or intending to deprive the defendant of evidence, this Court would reverse. *People v Albert,* 89 Mich App 350; 280 NW2d 523 (1979). However, not

every failure to keep these notes requires reversal. *People v Fiorini (On Rehearing),* 59 Mich App 243; 229 NW2d 399 (1975), *lv den* 395 Mich 790 (1975). Even though the police destroyed these notes "intentionally", they did not do it either in bad faith or to deprive defendant of evidence. The police officer testified that the evidence was destroyed pursuant to departmental policy to save space. In *People v Jeffrey Johnson,* 113 Mich App 650, 657; 318 NW2d 525 (1982), this Court addressed a similar issue:

"The police policy of destroying fingerprint evidence after 30 days, when it has been determined that a positive matchup is not possible from the latent prints, is not looked on by this Court with great favor. Although we recognize the need to control the number of files or the types of materials that are kept in police files from growing too large, we must bear in mind the importance of maintaining evidence which may play a crucial part in a defendant's proving of his case. In the instant case where the fingerprints evidence was destroyed in accordance with police policy and procedure and there has been no evidence presented of intentional misconduct, suppression or bad faith, the facts do not compel us to use the destruction of this evidence as a basis for the reversal of defendant's conviction * * *."

See also *People v Oliver,* 111 Mich App 734; 314 NW2d 740 (1981); *People v Hardaway,* 67 Mich App 82; 240 NW2d 276 (1976).

In this case, reversal is not required even though defendant's cross-examination was unnecessarily restricted. First, defendant did not request the notes before their destruction. Second, the witness testified that she was testifying from memory and not from her report which was written from the notes. Third, the evidence was admitted merely for impeachment. Fourth, this evidence

was cumulative: three others testified that defendant had long hair and a mustache that morning. Fifth, the evidence against defendant was very strong.

Defendant next argues that the complainant's identification testimony at trial should have been suppressed. He first argues that he should have been given the opportunity to have counsel present when the complainant identified him at the gas station.

Although a defendant is generally entitled to counsel during identifications, this is not always true during a prompt on-the-scene identification. *People v Anderson,* 389 Mich 155, 187, fn 23; 205 NW2d 461 (1973). There are different types of on-the-scene identifications. The first type of situation is where the defendant is taken to the witness or where the witness is taken to the defendant who is being detained. Examples can be found in *People v Purofoy,* 116 Mich App 471; 323 NW2d 446 (1982), and *People v Starks,* 107 Mich App 377; 309 NW2d 556 (1981), *lv den* 413 Mich 901 (1982). Whether or not defendant is entitled to counsel in this situation depends on whether or not "the police have very strong evidence that the person stopped is the culprit". *People v Turner,* 120 Mich App 23, 36; 328 NW2d 5 (1982). The on-the-scene identification is justified because it allows confirmation or denial while the witness's memory is still fresh and it expedites the release of innocent suspects. *People v Johnson,* 59 Mich App 187; 229 NW2d 372 (1975). These advantages are balanced against the inherent suggestiveness of the one-on-one identification itself. *Turner, supra; People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979).

Another type of on-the-scene identification situa-

tion occurs when the victim accompanies the police while searching the area for the criminal. The situation in *People v Nathaniel Johnson,* 113 Mich App 414; 317 NW2d 645 (1982), is very close to this type of situation. In this type of situation, counsel is obviously not required because the suspect is not even really a suspect until after the victim has identified him. Requiring counsel here would be clearly impractical.

The present situation presents a third variation of an on-the-scene identification, because the complainant already knew who her assailant was before the "identification". She was not taken to see defendant in hopes of stirring a recollection upon seeing him but rather merely to point out to the police the man she had already designated to them as her assailant. As such, an identification of the type described in *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), did not occur, and the inherent suggestiveness normally present in an on-the-scene identification is therefore absent.

Defendant next argues that the identification at his preliminary parole revocation hearing without the presence of his counsel should have been suppressed at trial. However, because defendant has failed to provide us with a transcript of the preliminary parole violation hearing, we can only deem the issue as waived. *People v Kelly,* 122 Mich App 427; 333 NW2d 68 (1983).[1]

Defendant also argues that the two identifications were impermissibly suggestive. However, the fairness of the procedure is evaluated in the light

[1] Because we realize that this lapse is defense counsel's and not defendant's, we might have been inclined to remand to allow defendant to obtain the necessary records. However, we do not believe that the in-court identification was sufficiently tainted even if defendant were deprived of his right to counsel at this particular identification. See *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).

of the totality of the circumstances. *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974). The test is not whether it is suggestive but rather whether the totality of the circumstances shows it to be reliable. *Neil v Biggers,* 409 US 188; 93 S Ct 375; 34 L Ed 2d 401 (1972). Viewing the facts in this case, we do not believe that the identifications were impermissibly suggestive.

Defendant also argues, based on *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), that the identification at the preliminary examination confrontation was unnecessarily suggestive as well. However, in this case, the complainant had already identified defendant before the preliminary examination. Furthermore, the length of time between the crime and the preliminary examination was only about a month. In addition, the complainant testified that she had plenty of time to see the defendant clearly during the crime itself. As such, this case is controlled by *People v Belenor,* 71 Mich App 10; 246 NW2d 355 (1976), *rev'd on other grounds* 408 Mich 244; 289 NW2d 719 (1980), and *People v Manuel Johnson,* 58 Mich App 347; 227 NW2d 337 (1975), *lv den* 396 Mich 851 (1976).

Citing *People v Morris,* 77 Mich App 561; 258 NW2d 559 (1977), *lv den* 402 Mich 844 (1977), defendant next argues that his conviction should be reversed with prejudice because of prosecutorial misconduct. Defendant's first trial was aborted after a mistrial was declared during the prosecutor's opening argument.[2] His second trial was reversed on a peremptory order (the prosecutor conceding) because the prosecutor had improperly questioned some of defendant's witnesses about defendant's religious beliefs and practices. Al-

---

[2] The prosecutor mentioned certain prior criminal acts without being able to prove that they were committed by defendant.

though conceivably these two instances could be considered in determining a pervasive pattern of prosecutorial misconduct, they are not sufficient in and of themselves. Neither error occurred at defendant's last trial. The normal remedy for prosecutorial misconduct is a new trial, not total dismissal.

The three other instances are more pertinent. First, a report written by Detective Bauer indicated that defendant's employer saw defendant at the gas station at 10 a.m. when defendant came in to pick up a calculator. However, the employer testified that defendant came there at about 8:30 a.m. Defendant now claims that the document itself was altered by changing the time noted in the report from 10 to 8:30. Second, the prosecutor cancelled a line-up identification. Finally, defendant claims the prosecutor in his opening statement in one of the earlier trials misrepresented the time marked on a traffic ticket defendant claimed he witnessed. Defendant argued the time on the ticket supported his alibi defense and that the prosecutor stated the time was a half hour later than that actually written on the ticket.

However, looking at these instances, we do not believe that any misconduct here was so prevalent and crucial as to require reversal. See *People v Tait*, 99 Mich App 19; 297 NW2d 853 (1980). The police document alteration seems neither crucial nor sinister on closer examination. First, Officer Bauer testified at trial that the gas station owner had in fact told him that he had seen defendant at 10 a.m. As such, defendant was able to bring this discrepancy before the jury. Furthermore, the crucial part of the owner's testimony was that he had seen defendant unshaven that morning. Whether this occurred at 8:30 or 10 a.m. is immaterial.

The cancelling of the line-up identification was not in and of itself pernicious. Defendant could have requested a line-up himself, as he retained counsel only about five or six days later.

We agree that the prosecution should not have argued that the traffic ticket was issued at 9:45 a.m. However, the ticket itself was available at this trial. This initial "failure to investigate properly" did not prejudice defendant in the present trial.

Defendant next argues that improper hearsay evidence was admitted when the complainant's friend testified that complainant told her, "My God, I know him, it's my mechanic". About a half hour after the rape, the complainant telephoned a friend, who arrived at her apartment about ten minutes later. This statement was made soon afterward. The only rule that would conceivably permit this hearsay evidence is MRE 803(2): "Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." The admission of such evidence is usually within the trial judge's discretion. *Browning v Spiech,* 63 Mich App 271; 234 NW2d 479 (1975). For evidence to be admitted under this exception, the statement must arise out of a startling occasion, must have been made before the declarant has had time to contrive and misrepresent, and must relate to the startling occasion's circumstances. *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979). The circumstantial probability of reliability is furnished through the excitement of the moment. *People v Cunningham,* 398 Mich 514; 248 NW2d 166 (1976).

Obviously, the declarant's statement arose out of a startling occasion and related to that startling

occasion's circumstances. The chief question is whether or not it was made before there had been time to contrive and misrepresent. Actual contrivance or misrepresentation is not necessary to disqualify the evidence. "How long can excitement prevail? Obviously, there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor." Slough, *Spontaneous Statements and State of Mind,* 46 Iowa L Rev 224, 243 (1961).

MRE 803(2) is identical to FRE 803(2). The Federal Advisory Committee Note states: "Spontaneity is the key factor * * *". Michigan Court Rules Annotated—Evidence Rules, p 679. In *People v Ivory Thomas,* 14 Mich App 642, 649; 165 NW2d 879 (1968),[3] Judge (now Justice) Levin wrote in concurrence:

> "[T]he emotional impact of a startling event, *'which stills the reflective faculties and removes their control,* so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock.' "

See also *Carter v C F Smith Co,* 285 Mich 621; 281 NW 380 (1938).

The prosecutor failed to establish a sufficient foundation in the present case to have this evidence admitted. First, the record is unclear whether or not the statement was made in response to a specific question. The witness testified that she had spoken to the complainant before the complainant made the statement. Although the fact that a statement has been made in response to questions does not in and of itself preclude the statement from being an excited utterance, it is a

---

[3] MRE 803(2) did not change prior Michigan law. Michigan Court Rules Annotated—Evidence Rules, p 674.

factor militating against admitting it. *Holtz v L J Beal & Son, Inc,* 339 Mich 235, 240; 63 NW2d 627 (1954).

Second, the statement was made at least 40 minutes after the event. In *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366; 13 ALR3d 1104 (1965), this Court upheld the admission of a statement made 20-25 minutes after a fire started. However, in *Rice* the fire, a continuing event, was still raging. In the present case, the rape had ended by the time the statement was made.

The witness testified that the complainant was upset and crying when she arrived at the complainant's residence. However, we cannot really say that the statement was a spontaneous response to the event. The complainant composed herself enough in the half-hour period following the rape to make the phone call.[4] The statement was not made until ten minutes after that phone call. We cannot conclude, based on this record, that the complainant was still within the grip of the event.

However, this error is harmless. Because complainant had already identified defendant as the assailant, it was cumulative. *Cunningham, supra,* 398 Mich 523 (WILLIAMS, J., *concurring); People v Roberson,* 90 Mich App 196; 282 NW2d 280 (1979), *lv den* 407 Mich 908 (1979); *People v Debreczeny,* 74 Mich App 391, 397; 253 NW2d 776 (1977) (KELLY, J., *concurring).* In addition, the other evidence against defendant was very strong.

Defendant next argues that the term "mental anguish" as used in the criminal sexual conduct

---

[4] "Proof that between the event and the statement the declarant performed tasks requiring relatively careful thought, of course, is strong evidence that the effect of the exciting event has subsided." McCormick, Evidence (2d ed), § 297, p 706.

statute, MCL 750.520a(f); MSA 28.788(1)(f), is unconstitutionally vague. It has been held that:

"A criminal statute is impermissibly vague if it does not provide fair notice of the conduct proscribed, confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or if its coverage is overbroad and impinges on First Amendment freedoms * * *." *People v Thompson,* 76 Mich App 705, 709; 257 NW2d 268 (1977), *lv den* 402 Mich 829 (1977).

On the other hand:

"Even though the statute may be susceptible to impermissible interpretations, reversal is not required where the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness, and where defendant's conduct falls within that proscribed by the properly construed statute." *People v Harbour,* 76 Mich App 552, 558; 257 NW2d 165 (1977), *lv den* 402 Mich 832 (1977).

The prosecutor argues that any vagueness problem has been cured by *People v Gorney,* 99 Mich App 199; 297 NW2d 648 (1980), *lv den* 410 Mich 911 (1980). Declaring that it was trying to avoid "finding the statute unconstitutionally vague" and "to preserve the integrity of the criminal sexual statute as a whole", 99 Mich App 207, *Gorney* interpreted the words "mental anguish" to mean "extreme mental anguish" even though the Legislature had expressly rejected using the words "extreme mental anguish or trauma" to define "physical injury" as that term is used in the criminal sexual conduct statute. This interpretation has since been criticized by other panels on this Court. *People v Reese,* 114 Mich App 644; 319 NW2d 610 (1982); *People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981), *held in abeyance* 412 Mich 859

(1981). The most telling criticism of *Gorney,* however, was made in *People v Jenkins,* 121 Mich App 195, 200-201; 328 NW2d 403 (1982):

> "In our opinion, the *Gorney* panel's substitution of 'extreme' mental anguish for the statutory phrase 'mental anguish' is merely a semantic exercise which results in redundancy and unnecessary confusion. The term 'anguish' is defined in Webster's Third New International Dictionary as 'extreme pain' and 'excruciating distress'. Therefore, in common usage, the term 'mental anguish' means extreme pain or excruciating distress of the mind. Viewed in this light, the *Gorney* panel's requirement of 'extreme' mental anguish results in a redundancy."[5]

*Jenkins* then went on to state:

> "[T]he proper inquiry to determine whether there is sufficient evidence of the mental anguish element is whether the victim suffered any significant degree of mental distress greater than that normally attendant to criminal sexual assaults accomplished by force or coercion." 121 Mich App 201.

See also *People v Gwinn,* 111 Mich App 223, 257; 314 NW2d 562 (1981) (MAHER, J., *dissenting*).

We agree with *Jenkins.* In viewing the criminal sexual conduct statute as a whole, we note that, overall, the basic distinction between first-degree and third-degree criminal sexual conduct is that first-degree criminal sexual conduct is an aggravated form of third-degree criminal sexual conduct. The crime of first-degree criminal sexual conduct involves proof of sexual penetration accompanied by proof that the victim was under 13 years of age, that the victim was under 16 years of age but a member of the same household, that the

---

[5] We do realize, however, that Minnesota's criminal sexual conduct statute, Minn § 609.342(e)(i), uses the term "severe mental anguish".

penetration occurred during another felony, that the defendant was aided or abetted (under certain circumstances), that the defendant was armed, or that the victim was personally injured. These six different factors are all aggravating factors elevating a criminal act of sexual penetration to a crime whose maximum punishment is life imprisonment. Therefore, as a matter of statutory construction, the emotional distress that a victim suffers must be more than the average victim suffers. As such, testimony that the victim is hysterical, upset, and crying is insufficient by itself to establish "mental anguish" within the meaning of the statute.

We note that soon after *Jenkins* was decided, the Prosecuting Attorneys Coordinating Counsel newsletter asked: "Query: What is a 'normal' response to being raped?". We agree that this is a good question and that its resolution will require sensitivity to both the victim's plight and the legal question involved.

To solve this problem, we return to *Gorney.* Although we do not believe it was correctly reasoned,[6] we believe *Gorney* was correctly decided. In defining "extreme mental anguish", *Gorney* stated that it "may include the need by the victim for

---

[6] *Gorney* also seems to have reached its result in redefining "mental anguish" out of a fear that the statute would be unconstitutional if second-degree criminal sexual conduct and fourth-degree criminal sexual conduct proscribed precisely the same activities. Although good statutory interpretation shows that the two statutes do not cover precisely the same conduct, as a matter of federal law such a result would not be unconstitutional:

"So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

"* * * [W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants * * *.

"The Court of Appeals * * * [concluded that] when two statutes prohibit 'exactly the same conduct,' the prosecutor's * * * discretion could produce 'unequal justice,' [and such] * * * legislative redun-

psychiatric care or some interference with the victim's ability to conduct a normal life, such as absence from the workplace". 99 Mich App 207. These factors are helpful in now determining whether the victim suffered significantly more mental distress than the average victim. We believe that one key to this determination is whether or not the victim has suffered lasting effects. In one instance, this standard may be met where the rape has so unnerved the victim that he or she is unable to go to work for a while. See *Baker #2, supra.* In another instance, the psychological effects may last inordinately long, although the victim is able to work. In *Jenkins,* the victim was given a prescription for Valium two days after the rape. Twelve days later, she discontinued the Valium and another medicine was prescribed to treat her insomnia.

A similar situation is present here. The victim testified that she still had trouble sleeping three years after the rape. Furthermore, she missed three days from work. We believe that this evidence, coupled with the evidence that she was very upset and crying after the incident, is sufficient to constitute "mental anguish" under the act.

Defendant next argues that his convictions for both first-degree criminal sexual conduct and breaking and entering with intent to commit criminal sexual conduct violate the prohibition against

---

dancy was [dubiously] constitutional. * * * We find this analysis factually and legally unsound.

"* * * The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. * * * Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." *United States v Batchelder,* 442 US 114, 123-125; 99 S Ct 2198; 60 L Ed 2d 755 (1979).

See also *People v Ford,* 417 Mich 66; 331 NW2d 878 (1982).

double jeopardy. We disagree. Because the aggravating factor elevating the criminal sexual conduct to first-degree criminal sexual conduct is not the breaking and entering, double jeopardy does not preclude convictions for both. *People v Stinson,* 113 Mich App 719; 318 NW2d 513 (1982); *People v Armstrong,* 100 Mich App 423; 298 NW2d 752 (1980), *lv den* 412 Mich 865 (1981); *People v Flores,* 92 Mich App 130; 284 NW2d 510 (1979), *lv den* 407 Mich 932 (1979).[7] In *People v Davenport,* 122 Mich App 159; 332 NW2d 443 (1982), we held that a breaking and entering is completed once the defendant is inside the building. Therefore, a conviction for a crime he subsequently commits once inside the building does not constitute double jeopardy.

Defendant next argues that the trial judge erred in allowing a prosecution rebuttal witness to testify, even though the notice of alibi rebuttal statute had not been complied with. MCL 768.21(2); MSA 28.1044(2). See *People v Terry Alexander,* 82 Mich App 621; 267 NW2d 466 (1978), *lv den* 406 Mich 936 (1979). However, notice was not required here because the witness was not an alibi rebuttal witness but an impeachment witness. *People v Haisha,* 111 Mich App 165; 314 NW2d 465 (1981); *People v Gillman,* 66 Mich App 419; 239 NW2d 396 (1976).[8]

Affirmed.

---

[7] Therefore, *People v Swearington,* 84 Mich App 372; 269 NW2d 467 (1978), is distinguishable.

[8] Defendant also argues that his due process rights were denied when this Court denied his motion to remand. Some cases have held that such a denial is the law of the case. *People v Douglas,* 122 Mich App 526; 332 NW2d 521 (1983); *People v Wiley,* 112 Mich App 344; 315 NW2d 540 (1981). Whether or not we have the power to remand, we do not believe that defendant would benefit. The instances of prosecutorial misconduct that support his claim for a remand to establish a factual basis are just not that sinister. We cannot see how such evidence would merit reversal. Anyway, defendant should have appealed this Court's denial of his remand petition to the Supreme Court or have filed a motion for rehearing in this Court rather than attacking it collaterally.